ORAL ARGUMENT NOT YET SCHEDULED
No. 13-5192

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

ALEC L., *et al.*,
Plaintiffs – Appellants,

v.

GINA McCARTHY, *et al.*,
Defendants – Appellees,

THE NATIONAL ASSOCIATION OF MANUFACTURERS, *et al.*,
Intervenors for Defendants –Appellees.

_____

On Appeal from the United States District Court
for the District of Columbia (No. 11-cv-02235 (RLW))

_____

**OPENING BRIEF FOR YOUTH APPELLANTS**

_____

PHILIP L. GREGORY
Cotchett, Pitre &
McCarthy, LLP
840 Malcolm Road
Burlingame, CA 94010
(650) 697-6000
Fax: (650) 697-0577

JULIA A. OLSON
Wild Earth Advocates
2985 Adams St.
Eugene, OR 97405
(541) 344-7066
Fax: (541) 344-7061

THOMAS J. BEERS
Beers Law Offices
234 E. Pine St.
Missoula, MT  59807
(406) 728-4888
Fax: (406) 728-8445

## YOUTH APPELLANTS' CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), Appellants Alec L., by and through his Guardian *Ad Litem* Victoria Loorz, *et al.* hereby certify as follows:

A.    **Parties and *Amici***

**Plaintiffs in the District Court and Appellants in this Court are:** Alec L. by and through his Guardian *Ad Litem* Victoria Loorz; Victoria Loorz; Madeleine W. by and through her Guardian *Ad Litem* Janet Wallace; Janet Wallace; Garrett S. by and through his Guardian *Ad Litem* Valerie Serrels; Grant S. by and through his Guardian *Ad Litem* Valerie Serrels; Valerie Serrels; Zoe J. by and through her Guardian *Ad Litem* Nina Grove; Nina Grove; Kids vs. Global Warming, a project of Earth Island Institute, a non-profit organization; and WildEarth Guardians, a non-profit organization.

**Government Defendants in the District Court were:** Lisa P. Jackson in her official capacity as Administrator of the United States Environmental Protection Agency; Kenneth Lee Salazar in his official capacity as Secretary of the United States Department of the Interior; Thomas James Vilsack in his official capacity as Secretary of the United States Department of Agriculture; Gary F. Locke in his official capacity as Secretary of the United States Department of Commerce; Steven Chu in his official capacity as Secretary of the United States Department of Energy; Robert M. Gates in his official capacity as Secretary of the

i

United States Department of Department of Defense; and Leon Edward Panetta in his official capacity as Secretary of the United States Department of Defense.

**Government Appellees in this Court are:** Gina McCarthy in her official capacity as Administrator of the United States Environmental Protection Agency; Sally Jewell in her official capacity as Secretary of the United States Department of the Interior; Thomas James Vilsack in his official capacity as Secretary of the United States Department of Agriculture; Penny Pritzker in her official capacity as Secretary of the United States Department of Commerce; Ernest Moniz in his official capacity as Secretary of the United States Department of Energy; and Chuck Hagel in his official capacity as Secretary of the United States Department of Defense.

**Industry Intervenors in support of the Government in the District Court and in this Court are:** National Association of Manufacturers; Delta Construction Company, Inc.; Dalton Trucking, Inc.; Southern California Contractors Association, Inc.; California Dump Truck Owners Association; and Engineering & Utility Contractors Association.

**Applicant *Amici* in the District Court for Plaintiffs were:** Dr. James E. Hansen, and Law Professors Craig Anthony Arnold, Dr. Deepa Badrinarayana, Michael Blumm, Maxine Burkett, Federico Cheever, Karl S. Coplan, Timothy P. Duane, Eric T. Freyfogle, Alyson C. Fluornoy, Jacqueline Hand, Ryke Longest,

James R. May, Patrick Parenteau, Zygmunt Jan Broel Plater, William Rodgers, Joseph L. Sax, James Gustave Speth, David Takacs, Gerald Torres, Burns H. Weston, Charles Wilkinson, and Mary Christina Wood.

*Amici* **in the District Court for Defendants were:** Professors Ronald A. Cass, Robert A. Destro, James L. Huffman, and Jason Scott Johnston.

Youth incorporate by reference the Rule 26.1 Corporate Disclosure Statement below.

**B.    Rulings Under Review.**

The rulings under review are the District Court's May 31, 2012 order granting Defendants and Defendant-Intervenors' Motions to Dismiss (A085) (and incorporated memorandum opinion (A074-84)); and May 22, 2013 order denying Plaintiffs' Motion for Reconsideration (A097) (and incorporated memorandum opinion (A086-96)), in *Alec L., et al. v. Jackson, et al*., No. 1:11-cv- 02235-RLW (Hon. Robert L. Wilkins).

**C.    Related Cases.**

Appellants are unaware of any related cases.

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

WildEarth Guardians is a 501(c)(3) non-profit corporation that has no parent companies and there are no publicly held companies that have a 10 percent or greater ownership interest in WildEarth Guardians. WildEarth Guardians is a non-profit organization dedicated to protecting and restoring wildlife, wild rivers, and wild places in the American West, and to safeguarding Earth's climate and air quality. Towards this end, WildEarth Guardians and its members work to replace fossil fuels with clean, renewable energy in order to safeguard public health, the environment, and Earth's climate for future generations.

Kids vs. Global Warming ("KvGW") is a project of Earth Island Institute, a 501(c)(3) non-profit organization.  KvGW has no parent companies, and there are no publicly held companies that have a 10 percent or greater ownership interest in KvGW. KvGW is committed to creating opportunities for youth to learn about the science and solution of human-made climate change, and then to take action that will reduce dependence on fossil fuels and influence government throughout the world to make good decisions now that impact the future of youth and generation to come. KvGW is a membership organization of thousands of youth from all over the country who are concerned about how human-made climate change is affecting and will continue to affect them and their future.

**TABLE OF CONTENTS**

YOUTH APPELLANTS' CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ........................................................... i

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ................................. iv

TABLE OF CONTENTS ..................................................................... v

TABLE OF AUTHORITIES ............................................................. viii

GLOSSARY OF ABBREVIATIONS .................................................. xvi

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 1

STATEMENT OF THE CASE ............................................................. 3

STATEMENT OF FACTS ................................................................. 4

SUMMARY OF THE ARGUMENT ..................................................... 8

STANDING ................................................................................. 11

ARGUMENT ............................................................................... 13

    I.   Standard of Review ............................................................... 13

    II.  Youth's Complaint Properly Alleges that Government Violated Their Constitutional Rights ............................................................ 14

          A.    The Public Trust Doctrine Provides Its Own Theory of Recovery under the Constitution ............................................. 15

          B.    The Public Trust Doctrine Arises Under the Constitution ....... 19

                1.    Sovereign Reserved Powers ........................................... 19

2.      Due Process Under the Fifth and Fourteenth Amendments ................................................................ 23

        a.      Fundamental Right ............................................... 24

        b.      Affirmative Duties Imposed by Due Process Protection ........................................................... 26

3.      Equal Protection ............................................................ 30

4.      Commerce Clause ........................................................ 33

III.   Youth Should Have Been Granted Leave to Amend to Plead these Constitutional Issues With Greater Specificity ...................................... 35

IV.    The District Court Incorrectly Found the Public Trust Doctrine is *Only* a Matter of State Law Based on the Decision in *PPL Montana, LLC v. Montana* ............................................................. 38

       A.      *PPL Montana* Did Not Address the Federal Public Trust Obligation ................................................................. 39

       B.      The Supreme Court Briefing in *PPL Montana* Contradicts the Reading of the Decision by both Industry and the District Court ............................................................... 43

       C.      The District Court's Interpretation of PPL Montana Runs Contrary to Public Trust Doctrine Law in the United States .... 45

V.     The Questions of Whether there is a Constitutional Public Trust, Whether Fundamental Rights are at Issue, and Whether Those Constitutional Rights are Violated Are Legal Questions That Cannot be Displaced by any Statute Enacted by Congress. .......................................... 47

       A.      This Is Not a Common Law Case, Even though the Public Trust Doctrine also Derives from Common Law .................... 48

       B.      The Clean Air Act Does Not Address Youth's Claims ........... 49

      C.     The Supreme Court's Opinion in *AEP* Addresses Only a
              Common Law Nuisance Claim Against "Fossil-Fuel Fired
              Power Plants" ..........................................................................50

CONCLUSION ......................................................................................53

CERTIFICATE OF COMPLIANCE ......................................................54

CERTIFICATE OF SERVICE...............................................................55

# TABLE OF AUTHORITIES

## CASES

*Alabama v. Texas*,
  347 U.S. 272 (1954)...............................................................18

*American Electric Power Co. v. Connecticut*,
  564 U.S. ---, 131 S. Ct. 2527 (2011)................................. 2, 4, 10, 47-52

*Appleby v. City of New York*,
  271 U.S. 364 (1926)...............................................................46

*Arnold v. Mundy*,
  6 N.J.L. 1 (N.J. 1821)...........................................................20

*Atchinson v. Dist.of Columbia*,
  73 F.3d 418 (D.C. Cir. 1996) ...................................................37

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*,
  515 U.S. 687 (1995)...............................................................50

*Barr v. Clinton*,
  370 F.3d 1196 (D.C. Cir. 2004) ................................................13

*Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943)...............................................................30

*Belizan v. Hershon*,
  434 F.3d 579 (D.C. Cir. 2006) .................................................37

*Bell v. Hood*,
  327 U.S. 678 (1946)...............................................................13

*Best v. Kelly*, 39 F.3d 328
  (D.C. Cir. 1994) ...............................................................13-14

\* Authorities upon which we chiefly rely are marked with an asterisk.

*Bowen v. Michigan Acad. of Family Physicians*,
476 U.S. 667 (1986) ...............................................................................31

*Brown v. Board of Education*,
347 U.S. 483 (1954) ...............................................................................28

*Caminetti v. United States*, 242 U.S. 470 (1917) ...................................33

*City of Alameda v. Todd Shipyards Corp.*,
635 F. Supp. 1447 (N.D. Cal. 1986) .....................................................45

*City of Los Angeles v. NHTSA*,
912 F.2d 478 (D.C. Cir. 1990) ..............................................................27

*Crandon v. U.S.*,
494 U.S. 152 (1990) ...............................................................................50

*Daniels v. Williams*,
474 U.S. 327 (1986) ...............................................................................26

*\*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
489 U.S. 189 (1989) .........................................................................28, 29

*Doe v. Claiborne Cnty.*,
103 F.3d 495 (6th Cir. 1996) .................................................................26

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) ..........................................................36-37

*Fla. Audubon Soc. v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996) ................................................................27

*Fletcher v. Peck*,
10 U.S. 87 (1810) ...................................................................................19

*Foman v. Davis*,
371 U.S. 178, 182 (1962) ...................................................................2, 36

*Freeman v. Pitts*,
503 U.S. 467 (1992) ...............................................................................19

*Geer v. Connecticut,
    161 U.S. 519 (1896) ................................................................ 16-17, 20

General Elec. Co. v. Envtl. Prot. Agency,
    360 F.3d 188 (D.C. Cir. 2004) .............................................................13

Georgia v. Tenn. Copper Co.,
    206 U.S. 230 (1907) ..............................................................................30

Griswold v. Connecticut,
    381 U.S. 479 (1965) ..............................................................................25

Hagans v. Lavine,
    415 U.S. 528 (1974) ..............................................................................14

Helvering v. Davis,
    301 U.S. 619 (1937) ..............................................................................34

Holland v. Florida,
    560 U.S. 631, 130 S. Ct. 2549 (2010) ..................................................19

Holmes v. Jennison,
    39 U.S. 540 (1840) ................................................................................22

Holt v. Sarver,
    309 F. Supp. 362 (E.D. Ark. 1970), aff'd, 442 F.2d 304 (8th Cir. 1971) ............28

Hughes v. Oklahoma,
    441 U.S. 322 (1979) .........................................................................16, 17

Idaho v. Coeur d'Alene Tribe,
    521 U.S. 261 (1997) ..............................................................................46

*Ill. Cent. R.R. v. Illinois,
    146 U.S. 387 (1892) .............................................................20, 25, 32, 35

Illinois v. City of Milwaukee,
    406 U.S. 91 (1972) ................................................................................49

*In re Complaint of Steuart Transp. Co.,*
    495 F. Supp. 38, 40 (E.D. Va. 1980).................................................. 17, 42-43, 45

*In re Griffiths,*
    413 U.S. 717 (1973)..................................................................................31

*In Re Waihole Ditch,*
    9 P.3d 409 (Haw. 2000) ...........................................................................20

*Ingraham v. Wright,*
    430 U.S. 651 (1977)..................................................................................25

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905)....................................................................................22

*Johnson v. Townsley,*
    80 U.S. 72 (1871).....................................................................................32

*Kendall v. United States,*
    37 U.S. 524 (1838)....................................................................................32

*Kreiger v. United States Dep't of Justice,*
    529 F. Supp.2d 29 (D.D.C. 2008) ............................................................37

*Krupski v. Costa Crociere S.P.A.,*
    560 U.S. 538 S. Ct. 2485 (2010) .............................................................37

*Lacoste v. Dep't of Conservation,*
    263 U.S. 545 (1924)..................................................................................17

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)..................................................................................11

*Marbury Law Grp. v. Carl,* 729 F.Supp.2d 78  (D.D.C. 2010)..............................39

*Marbury v. Madison,*
    5 U.S. 137 (1803)................................................................................27, 32

*Milwaukee v. Illinois,*
    451 U.S. 304 (1981)............................................................................47, 48

*Minors Oposa v. Factoran*,
  G.R. No. 101083, 224 S.C.R.A. 792 (July 30, 1993) ............................................3

*Mobil Oil Corp. v. Higginbotham*,
  436 U.S. 618 (1978) ...........................................................................................48

*Nat'l Audubon Soc'y v. Superior Court*,
  658 P.2d 709 (Cal. 1983) ...................................................................................23

*Nat'l Fed'n of Fed. Emp. v. Cheney*,
  883 F.2d 1038 (D.C. Cir. 1989) .........................................................................11

*Newton v. Commissioners*,
  100 U.S. 548 (1879) ...........................................................................................21

*Norman v. State*,
  597 P.2d 715 (Mont. 1979) .................................................................................43

*Office of Commc'n of United Church of Christ v. F.C.C.*,
  707 F.2d 1413 (D.C. Cir. 1983) .........................................................................34

*Oneida Indian Nation of N.Y. v. Cnty. of Oneida*,
  414 U.S. 661 (1974) ...........................................................................................13

*Palmore v. Sidoti*,
  466 U.S. 429 (1984) ...........................................................................................33

*Platt v. Union Pac. R.R. Co.*,
  99 U.S. 48 (1878) ...............................................................................................50

*\*PPL Montana, LLC v. Montana*,
  565 U.S. ---, 132 S. Ct. 1215 (2012) ....................................... 2, 10, 25, 38-45, 47

*PPL Montana, LLC v. State*, 229 P.3d 421 (Mont. 2010) ......................................44

*Reichelderfer v. Quinn*,
  287 U.S. 315 (1932) ...........................................................................................20

*Rochin* v. *California*,
  342 U.S. 165 (1952) ...........................................................................................24

*Romer v. Evans,
   517 U.S. 620 (1996)............................................................31, 33

Shively v. Bowlby,
   152 U.S. 1 (1894)...................................................................46

Silverman v. Barry,
   727 F.2d 1121, 1124 (D.C. Cir. 1984) ...................................1

State v. City of Bowling Green,
   313 N.E.2d 409 (Ohio 1974)...............................................23

Stone v. Mississippi,
   101 U.S. 814 (1879)........................................................ 19-20

Union Pac. Ry. v. Botsford,
   141 U.S. 250 (1891)........................................................ 25-26

United States v. 1.58 Acres of Land,
   523 F. Supp. 120 (D. Mass. 1981) ..................................16, 45

United States v. 32.42 Acres of Land,
   683 F.3d 1030 (9th Cir. 2012).............................................45

United States v. Carolene Prods. Co.,
   304 U.S. 144 (1938)............................................................31

United States v. Causby,
   328 U.S. 256 (1946)............................................................34

Washington v. Glucksberg,
   521 U.S. 702 (1997)............................................................24

Weinberger v. Wiesenfeld,
   420 U.S. 636 (1975)............................................................30

White v. Rochford,
   592 F.2d 381 (7th Cir. 1979)...............................................28

xiii

*Winston v. Lee*,
   470 U.S. 753 (1985) ...................................................................26

*Zivototsky v. Clinton*,
   566 U.S. --, 132 S. Ct. 1421 (2012) ......................................18

## CONSTITUTIONAL PROVISIONS

Mont. Const. art. X, § 11(2) ......................................................43

*U.S. Const. amend. V ...............................................................23

*U.S. Const. amend. XIV ..........................................................23

*U.S. Const. art. I, § 8, cl. 3 .....................................................32

*U.S. Const. art. I, § 1 ..............................................................19

*U.S. Const. pmbl ...............................................................22, 25

## STATUTES

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1331 ............................................................. 1, 35-36

42 U.S.C. § 4331(b)(1) ..............................................................43

## RULES

### Federal Rules of Appellate Procedure

Fed. R. App. P. 4(a)(1)(B) .........................................................1

### Federal Rules of Civil Procedure

Rule 12(b)(1) .............................................................................13

Rule 12(b)(6) .............................................................................13

Rule 15(a)(2) ........................................................................2, 36

## OTHER AUTHORITIES

A. REITZE, JR. ENVIRONMENTAL LAW, ch. 5, 32 (2d ed. 1972) ..............................35

Bernard S. Cohen, *The Constitution, The Public Trust Doctrine, and the Environment* 1970 UTAH L. REV. 388, 392.........................................................35

Charles F. Wilkinson, *The Public Trust Doctrine in Public Land Law*, 14 U.C. DAVIS L. REV. 269, 284 (1980)..............................................................................16

Douglas L. Grant, *Underpinnings of the Public Trust Doctrine: Lessons from Illinois Central Railroad*, 33 ARIZ. ST. L.J. 849, 874-879 (2001) ......................20

J. Story, *Commentaries of the Constitution of the United States*, sec 459, 462 (2d ed. 1885)..........................................................................................................22

Jim Gardner, *Discrimination against Future Generations: The Possibility of Constitutional Limitation*, 9 ENVTL. L. 29, 35, 33 (1978)...................................23

Joseph L. Sax, *Liberating the Public Trust Doctrine from Its Historical Shackles*, 14 U.C. DAVIS L. REV. 185 (1980).......................................................15

Joseph L. Sax, *The Public Trust Doctrine in Natural Resource Law: Effective Judicial Intervention*, 68 MICH. L. REV. 471 (1970)...........................................16

Merriam-Webster, *Webster's Ninth New Collegiate Dictionary* (9th ed. 1988).....51

MICHAEL C. BLUMM & MARY CHRISTINA WOOD, THE PUBLIC TRUST DOCTRINE IN ENVIRONMENTAL AND NATURAL RESOURCES LAW (2013) ...................................43

RICHARD KLUGER, SIMPLE JUSTICE; THE HISTORY OF *BROWN V. BOARD OF EDUCATION* AND BLACK AMERICA'S STRUGGLE FOR EQUALITY (1976) ...............28

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| *AEP* | *Amer. Elec. Power Co. v. Connecticut*, 564 U.S. --, 131 S. Ct. 2527 (2011) |
| $CO_2$ | carbon dioxide |
| GHG | greenhouse gas |
| Government | Defendants-Appellees, Gina McCarthy, *et al.* |
| Industry | Intervenors for Defendants-Appellees, National Association of Manufacturers and Delta, Inc., *et al.* |
| KvGW | Kids vs. Global Warming |
| *PPL Montana* | *PPL Montana, LLC v. Montana*, 565 U.S.---, 132 S. Ct. 1215 (2012) |
| ppm | parts per million (atmospheric carbon dioxide concentration) |
| Youth | Plaintiffs-Appellants, Alec L., *et al.* |

## JURISDICTIONAL STATEMENT

**I.     U.S. District Court.**  The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331 because this action challenges the actions of Defendants-Appellees federal agencies and federal officials (collectively "Government"), acting in their official capacities under the U.S. Constitution and laws of the United States, including the Public Trust Doctrine.  *See Silverman v. Barry*, 727 F.2d 1121, 1124 (D.C. Cir. 1984).

**II.     Court of Appeals.**  This Court has jurisdiction under 28 U.S.C. § 1291.  The District Court issued final appealable orders in this action in favor of Government and Intervenors for Defendants-Appellees National Association of Manufacturers and Delta, Inc., *et al.*, (collectively "Industry") and against Plaintiffs-Appellants Alec L., *et al.*, (collectively "Youth").  *See* A074-97, A384-85.

**III.     Timeliness.**  Youth filed a timely notice of appeal on June 27, 2013 from final appealable orders by the District Court. A384-85; Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court in its Memorandum Opinion of May 31, 2012 incorrectly found that Youth's "complaint does not allege that the defendants violated any specific federal law or constitutional provision . . ." (A074), where Youth's Amended Complaint alleges violations of the following constitutional

provisions: Due Process (A069, ¶ 139); Equal Protection (A069, ¶ 140); and

Commerce (A069, ¶ 141).

2.     Whether the Public Trust Doctrine is a fundamental attribute of

federal sovereignty embedded in the Constitution, including the Vesting, Due

Process, Equal Protection, and Commerce clauses, and gives rise to a claim for

relief against Government trustees when essential national public trust resources

are being substantially impaired.

3.     Whether Youth should have been granted leave to amend their

complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) if their claims were

insufficiently pled where granting leave to amend under Federal Rule of Civil

Procedure 15(a)(2) "'shall be freely given when justice so requires'" and "this

mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting

Fed. R. Civ. P. 15(a)(2)).

4.     Whether the District Court improperly determined that the decision in

*PPL Montana, LLC v. Montana* ("*PPL Montana*"), 565 U.S. ---, 132 S. Ct. 1215

(2012) held the Public Trust Doctrine is *only* a matter of state law.

5.     Whether the District Court erred in applying the judicial doctrine of

displacement to Youth's constitutional claims, when it relied on an overly-broad

reading of the decision in *American Electric Power Co. v. Connecticut* ("*AEP*"),

564 U.S. ---, 131 S. Ct. 2527 (2011), where the Supreme Court's holding addresses

only a federal common law nuisance claim against "fossil-fuel fired power plants."

*Id.* at 2537.

## STATEMENT OF THE CASE

"Such a right belongs to a different category of rights altogether for it concerns nothing less than self-preservation and self-perpetuation . . . the advancement of which may even be said to predate all governments and constitutions.  As a matter of fact, these basic rights need not even be written in the Constitution for they are assumed to exist from the inception of humankind."

*Minors Oposa v. Factoran*[1]

Youth bring this case as beneficiaries of the constitutional Public Trust Doctrine, under which our federal government has an unalienable duty to protect essential natural resources as a public trust.  An atmospheric emergency caused by greenhouse gas ("GHG") emissions, especially carbon dioxide ("$CO_2$"), threatens our Nation's atmospheric resource and other public natural resources.  Emissions from the United States are the leading cause of this human-induced global energy imbalance.  Government has not protected public trust natural resources essential to Youth's life, liberty, and property interests.  The necessary balance of our Nation's atmosphere is now precariously close to "tipping points," which science concludes, if reached, would likely make the warming, and the resulting harms and losses, irreparable and irreversible.  Because of the urgent need for action, and consistent with its obligation under the constitutional Public Trust Doctrine,

---

[1] *Minors Oposa v. Factoran*, G.R. No. 101083, 224 S.C.R.A. 792 (July 30, 1993) (Phil.) (finding a government public trust duty to secure healthy natural resources for present and future generations).

Government must be ordered to protect our Country's atmospheric resource by developing a comprehensive climate recovery plan.

Government and Industry moved to dismiss Youth's case. The District Court granted their motions, holding there was no federal question and, in the alternative, Youth's claim was displaced by the Clean Air Act under the Supreme Court's decision in *AEP v. Connecticut*.  Youth moved for reconsideration, and the District Court denied their motion.  Youth timely filed this appeal.

## STATEMENT OF FACTS

Human civilization and the Earth's biodiversity developed during a period of time when our atmosphere contained a blanket of gases that naturally allowed the Earth's climate to remain in balance.  *See* Am. Compl., A035, ¶ 5; A052, ¶ 73-74; A054-55, ¶ 84.  For over the past 200 years, the burning of fossil fuels, such as coal and oil, have caused a substantial increase in the atmospheric concentrations of heat-trapping GHGs, disrupting atmospheric equilibrium and jeopardizing the safe climate-zone, placing human life in grave danger.  *See id.*, A035, ¶ 5; A037, ¶ 12; A051-53, ¶¶ 71, 75-79; A060, ¶ 103.  Decades of climate research show these historical and ongoing human practices severely impaired our Nation's atmosphere and led to unprecedented acceleration of global heating.  *See id.*, A052-53, ¶ 75; A054, ¶¶ 80, 81; A055, ¶ 85.  This warming is dangerous in part because it is

happening far more rapidly than in the past, due to human-caused $CO_2$ emissions. *See id.*, A064-65, ¶¶ 116-120.

Government actions and inactions related to GHG emissions have resulted in global heating, ocean acidification, melting icecaps and ice sheets, biodiversity loss, and extreme weather events. *See id.*, A036-37, ¶ 10.  Rising sea levels already threaten coastal communities and resources, such as New Orleans and the Florida Everglades, but are having even greater impact as sea levels continue to rise up to 2 meters this century. *See id.*, A057-58, ¶¶ 94-96; A062-63, ¶ 111.  Our Nation's ice is melting at accelerating rates, leading to receding glaciers, melting icebergs, disintegrating ice sheets, and melting permafrost. *See id.*, A058-60, ¶¶ 97-102.  Diminishing glaciers mean reduction in fresh water supplies for drinking and agriculture. *See id.* A058-59, ¶ 98.  The thawing permafrost threatens to release dangerous levels of methane, which would also take our country further into the danger zone of climate change. *See id.*, A059-60, ¶¶ 102-103.

Climate change also threatens the land-based food system. *See id.*, A062, ¶ 109; A063-64, ¶ 113.  Human-caused climate change has multiple, severe implications for human health. *See id.*, A063, ¶ 112.

In light of these occurrences, Youth are suffering, and will continue to suffer, harms to their life, liberty, and property from the impairment of the atmospheric resource through Government actions and inactions. *See id.*, A041-

47, ¶¶ 27-52.  They are harmed by the loss of enjoyment of forests from increased pine beetle infestations caused by climate change  (*id.,* A042, ¶ 29; A044, ¶ 39; A062, ¶ 109), by increased sea level rise in the communities and watersheds where they live and on beaches where they recreate (*id.*, A043, ¶ 31; A045, ¶ 44), by increased water temperatures and diseased fish in places they recreate (*id.*, A044, ¶ 40), by the emotional harm of witnessing the melting of Earth's ice sheets (*id.*, A042, ¶ 30), by increased severity of asthma (*id.*, A043, ¶ 32), and by increases in malaria (*id.*, A045, ¶ 45).  Youth's survival, health, recreational, scientific, cultural, inspirational, spiritual, educational, aesthetic, emotional well-being, and other rights and interests are and will be increasingly irreparably injured by the failure of Government to reduce carbon emissions and protect forests and soils. *See id.*, A047, ¶ 51.

The welfare of Youth is directly affected by the failure of Government to confront human-made climate change.  *See id.*, A034, ¶ 3; A052, ¶ 72.  Because our atmosphere is close to reaching climate tipping points, there is an urgent need for action by Government before our Nation crosses thresholds from which it cannot return.  *See id.*, A035, ¶ 6; A047-50, ¶¶ 53-65; A070, ¶¶ 145-150.  If Government does not act immediately to rapidly reduce carbon emissions and protect and restore the balance of the atmosphere, Youth will face irrevocable

harm: the collapse of natural resource systems and a largely uninhabitable Nation. *See id.*, A035, ¶ 6; A036, ¶ 9; A038, ¶ 16.

At the time of filing the First Amended Complaint, our atmosphere contained $CO_2$ levels of 390 parts per million ("ppm") of $CO_2$ compared to 280 ppm in pre-industrial times. *See id.*, A053 ¶ 76; A065, ¶ 122. The best available science shows that to protect our Nation's atmosphere and climate, we must restore Earth's energy balance. *See id.*, A065-66, ¶¶ 122-123. Atmospheric concentrations of $CO_2$ must be reduced by about 40 ppm to increase heat radiation to space and return Earth's energy balance, if other long-lived gases stay the same as today. *See id.* In addition, the best available science concludes that to protect our oceans, and life therein, atmospheric $CO_2$ levels must be reduced to 350 ppm or lower. *See id.*, A066, ¶ 124. Thus, atmospheric $CO_2$ levels must be returned to equilibrium of less than 350 ppm to avoid catastrophic harms and loss to our Nation. *See id.*, A036, ¶ 8; A038, ¶¶ 15, 17; A065, ¶ 122.

Government has been and continues to be ineffective in planning and managing our Nation's response to human-made climate change. *See id.*, A047-50, ¶¶ 53-65; A070, ¶¶ 145-150. To fulfill their responsibility, Government must account for and establish a plan to reduce annual $CO_2$ emissions in line with reducing atmospheric $CO_2$ to less than 350 ppm, from its current level, to limit average surface heating to 1° C (1.8° F) above pre-industrial temperatures. *See id.*,

A036, ¶ 8; A038, ¶¶ 15, 17; A065-69, ¶ 121-135.  If Government acts now, the task at hand is still feasible.  *See id.*, A067-69, ¶¶ 131-135.

## SUMMARY OF THE ARGUMENT

Youths' Amended Complaint claimed the Public Trust Doctrine is an attribute of our Nation's sovereignty and Government has trust obligations over the atmosphere pursuant to several provisions of the U.S. Constitution.  Government and Industry did not move to dismiss Youth's complaint on grounds that Youth failed to state constitutional claims, and the District Court did not address their constitutional claims in its opinion dismissing their case.  Youth should not be denied access to justice and are entitled to assert their constitutional claims on the merits.  The history of our Constitution and its Preamble, as well as clear Supreme Court jurisprudence, establish the Federal Public Trust as a fundamental attribute of sovereignty embedded in the constitutional Reserved Powers Doctrine and the Constitution's Vesting, Due Process, Equal Protection, and Commerce clauses.

Specifically, Youth argue the Reserved Powers Doctrine constrains Government from abrogating its public trust obligations by allowing the degradation of the atmospheric resource, thereby damaging Youth and future generations.  The right to use essential natural resources, like air and water, without having those public resources substantially impaired should be recognized as within the rights fundamental to life, liberty, and property protected by

substantive due process.  Further, citizens have the right to an adequate remedy to compel the sovereign to protect those essential natural resources when they have become (or are in imminent danger of becoming) substantially impaired. Government's public trust obligation is "so deeply rooted in the traditions and collective conscience of the people" and "implicit in the concept of ordered liberty" as to be fundamental.  Youth argue that Government's failure to rapidly reduce $CO_2$ emissions and protect and restore the balance of the atmosphere is a violation of Youth's constitutionally protected rights and is redressable by the Courts.

Allowing the loss of a habitable climate system is additionally a breach of the affirmative duties imposed by the trust relationship between Youth and Government and is a breach of the Equal Protection clause.  By continuing to abdicate their public trust duties to protect the atmosphere (an essential natural resource) from irreparable harm, Government is causing disproportionate impacts on Youth, a discriminatory consequence of Government's failure to rapidly reduce $CO_2$ emissions in order to protect and restore the balance of the atmosphere.

The atmosphere, more than any land or waterway, is shared amongst the United States and is within Government's power to regulate under the Commerce Clause.  As a co-trustee of the atmospheric resource, Government has a duty to prevent irreparable harm to these resources held in public trust.

9

Though their Amended Complaint raised these constitutional claims, if this Court should determine the Youth must raise them with more specificity, there is no valid reason to deny Youth leave to amend. Youth respectfully request this Court reverse the Order granting Government's and Industry's Motions to Dismiss and grant leave for Youth to amend their complaint, should this Court find the Amended Complaint inadequate.

Finally, the District Court erred in relying on two recent Supreme Court opinions to dismiss Youth's case. First, the District Court erred in relying on inapposite *dicta* in *PPL Montana,* 132 S. Ct. 1215 (2012), to find an "appearance" that no federal public trust obligation exists, when that question was not presented to, nor addressed by, the Supreme Court. Second, the District Court erred in relying on *AEP*, 131 S. Ct. 2527 (2011), to hold Youth's public trust claims were displaced by the Clean Air Act. Because Youth's claims are constitutional, based on fundamental obligations of the sovereign, they are incapable of being displaced by legislation. Additionally, the Clean Air Act does not address the claims Youth have brought under the several provisions of the Constitution.

In reviewing these issues *de novo*, this Court should reverse the District Court's opinion and remand for further proceedings on the merits or, in the interests of justice, grant leave for Youth to amend their complaint.

10

## STANDING

A plaintiff must demonstrate: (1) it has suffered an injury in fact, an actual or imminent invasion of a legally protected, concrete, and particularized interest; (2) a causal connection between the alleged injury and the defendant's conduct at issue; and (3) it is "likely," not "speculative," that the court can redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Standing focuses on the party before the court and not the issues the party seeks to adjudicate.  *Nat'l Fed'n of Fed. Emp. v. Cheney*, 883 F.2d 1038, 1041 (D.C. Cir. 1989).

Youth established their standing before the District Court and the facts establishing their injuries, including their declarations, went undisputed by Government and Industry.  *See* Youth Declarations of Garrett Serrels, Grant Serrels, Jaime Lynn Butler, Zoe Johnson, Nelson Kanuk, Madeleine MacGillivray Wallace, and Alec Loorz, A118-23, A147-59, A188-92, A254-58.  Youth's Amended Complaint, Youth declarations, and the expert declarations of Pushker Kharecha, Ph.D., Kevin E. Trenberth, Sc.D., Ove Hoegh-Guldberg, Ph.D., Sivan Kartha, Ph.D., Camille Parmesan, Ph.D., Jonathan Overpeck, Ph.D., Stefan Rahmstorf, Ph.D., Steven W. Running, Ph.D., David B. Lobell, Ph.D, Paul R. Epstein, Ph.D., Lise Van Susteren, M.D., Arjun Makhijani, Ph.D., and James Gustave Speth make clear the causal link between Government's violation of its fiduciary duty as trustee to protect against these injuries and the injuries already

11

sustained by, and continuing to imminently threaten, Youth.  *See* Am. Compl., A030-73; Expert Declarations, A109-17, A124-46, A160-87, A193-253, A259-370; Youth Declarations, A118-23, A147-59, A188-92, A254-58; *see also* Youth's Brief in Support of Motion for Preliminary Injunction, A098-108 (summary of Youth's injuries).

The Court can redress these injuries by declaring Youth's constitutional rights and by ordering Government to redress the violation and recover the trust asset.  Even though global warming, climate disruption, and ocean acidification are global problems, it is undisputed that Government could significantly slow the rate of warming, disruption, and acidification by reducing emissions in and by the United States.  *See* Declaration of Pushker Kharecha, Ph.D., A170-73, ¶¶ 22-24, 27-29, Declaration of Sivan Kartha, Ph.D., A213-14, ¶ 8, Declaration of James Gustave Speth, A217-19; Declaration of Arjun Makhijani, Ph.D., A271-74, ¶ 2. With the United States as the largest historic emitter of $CO_2$, the top current emitter per capita, and the second largest overall emitter in the world, the atmospheric resource cannot be restored without Government action. Declaration of Sivan Kartha, Ph.D., A213-15, ¶¶ 5, 8, 9, 13, 16.  Government can redress Youth's injuries in fact.

## ARGUMENT

### I.   Standard of Review

This Court reviews *de novo* the District Court's dismissal for lack of subject-matter jurisdiction under Federal Civil Procedure Rule 12(b)(1).  *See General Elec. Co. v. Envtl. Prot. Agency*, 360 F.3d 188, 190-91 (D.C. Cir. 2004).  The Court must treat the facts alleged in the complaint as true and "grant[] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (internal quotation marks omitted) (stating that claims must be construed "liberally" by the appellate court because the complaint was dismissed by the district court pursuant to Rule 12(b)(1) and 12(b)(6).

"Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Bell v. Hood*, 327 U.S. 678, 682 (1946).  Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Oneida Indian Nation of N.Y. v. Cnty. of Oneida,* 414 U.S. 661, 666 (1974).  To be dismissed under Rule 12(b)(1), the claims in question must "be flimsier than 'doubtful or questionable'—they must be 'essentially fictitious.'"  *Best v. Kelly*, 39

13

F.3d 328, 330 (D.C. Cir. 1994) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)) (concluding the constitutional claims were "not clearly fanciful claims, claims 'so attenuated and unsubstantial as to be absolutely devoid of merit,' that dismissal for lack of jurisdiction under Rule 12(b)(1) [wa]s warranted." *Best*, 39 F.3d at 331 (citations omitted).

## II.    Youth's Complaint Properly Alleges that Government Violated Their Constitutional Rights

Protection of our public natural resources has become one of the major Constitutional challenges of our time.  The Amended Complaint alleges Government has trust obligations over public resources pursuant to several provisions of the Constitution. A069, ¶¶ 139-141 (Due Process, Equal Protection, and Commerce).   Because the Public Trust Doctrine is an attribute of our Nation's sovereignty, it cannot be abrogated.  Government is subject to duties to protect public trust resources, including the atmosphere. *See id.*, ¶¶137-138.  Even though Youth's Amended Complaint states Public Trust Doctrine claims under the Constitution, Government's Motion to Dismiss raised no federal constitutional issues in its moving papers.  Government did not object to or seek to dismiss Youth's allegations of the fiduciary duties owed and their rights to that protection. *See* Am. Compl., A035, ¶ 5.  Because the constitutional claims were not raised as an issue by Government, they were not briefed in opposition to Government's motion by Youth.

14

The initial mention of Youth's constitutional allegations was in a footnote in Industry Intervenor NAM's Motion to Dismiss.  A371.  In Youth's brief opposing NAM's Motion to Dismiss, Youth reasserted their constitutional claims: "the Public Trust Doctrine is 'grounded' in several clauses of the Constitution"; and "[i]nterpretations of each of those [constitutional] clauses establish the underpinnings or foundations of the nature of our government's sovereignty." A374.  Youth argued the Public Trust Doctrine "establishes a sovereign obligation to hold critical natural resources in trust for the benefit of the citizen beneficiaries." *Id.*  Likewise, in their brief in opposition to Industry Intervenor Delta's Motion to Dismiss, Youth again asserted the federal Public Trust Doctrine is "constitutionally enshrined."  A376-77.

### A.    The Public Trust Doctrine Provides Its Own Theory of Recovery under the Constitution

The Public Trust Doctrine is a fundamental attribute of sovereignty embedded in the Constitution.[2]  The Doctrine is embodied in the sovereign's

---

[2] While the Public Trust Doctrine evolved primarily around the rights of the public with respect to tidelands and navigable waters, the Doctrine is not so limited. "[T]he public trust doctrine is not just a set of rules about tidelands, a restraint on alienation by the government or an historical inquiry into the circumstances of long-forgotten grants."  Joseph L. Sax, *Liberating the Public Trust Doctrine from Its Historical Shackles*, 14 U.C. DAVIS L. REV. 185, 186 (1980).  "The approach with the greatest historical support holds that certain interests are so intrinsically important to every citizen that their free availability tends to mark the society as one of citizens rather than serfs.  [Fn. Omitted.]  It is thought that, to protect those rights, it is necessary to be especially wary lest any particular individual or group

15

reserved powers through the vesting clauses of the Constitution, as well as the Due

Process, Equal Protection, and Commerce clauses of the Constitution.  As an

inherent attribute of sovereignty, the Public Trust Doctrine applies to both state

*and* federal governments.  This "dual sovereignty" envisioned by the Constitution

gives rise to distinct, but co-existing roles for state and federal governments:

> This formulation recognizes the division of sovereignty between the
> state and federal governments [of] those aspects of the public interest .
> . . *[Those] that relate to the commerce and other powers delegated to
> the federal government are administered by Congress in its capacity
> as trustee of the jus publicum*, while those aspects of the public
> interest in this property that relate to nonpreempted subjects reserved
> to local regulation by the states are administered by state legislatures
> in their capacity as co-trustee of the jus publicum.

*United States v. 1.58 Acres of Land*, 523 F. Supp. 120, 123 (D. Mass. 1981)

(emphasis added).

The federal government's authority and responsibility under the Public Trust

Doctrine comes into play where there are distinctly national interests in a natural

resource, as there decidedly are in the case of the atmosphere, a resource

transcending state borders.[3]  In *Geer v. Connecticut*, 161 U.S. 519, 527, 529

---

acquire the power to control them. . . . [¶] An allied principle holds that certain
interests are so particularly the gifts of nature's bounty that they ought to be
reserved for the whole of the populace."  Joseph L. Sax, *The Public Trust Doctrine
in Natural Resource Law: Effective Judicial Intervention*, 68 MICH. L. REV. 471,
476 (1970).

[3] The Public Trust Doctrine places a duty on governments to protect natural
resources.  "The heart of the public trust doctrine, however it may be articulated, is
that it imposes limits and obligations on governments."  Charles F. Wilkinson, *The*

(1896), overruled in *Hughes v. Oklahoma*, 441 U.S. 322 (1979), the Supreme

Court observed:

> Whilst the fundamental principles upon which the common property in game rests have undergone no change, the development of free institutions has led to the recognition of the fact that the power or control lodged in the State, resulting from this common ownership, is to be exercised, like all other powers of government, as a trust for the benefit of the people, and not as a prerogative for the advantage of the government, as distinct from the people, or for the benefit of private individuals as distinguished from the public good. Therefore, for the purpose of exercising this power, the State … represents its people, and the ownership is that of the people in their united sovereignty.[4]

*See Lacoste v. Dep't of Conservation*, 263 U.S. 545, 549 (1924) ("The wild

animals within its borders are, so far as capable of ownership, owned by the State

in its sovereign capacity for the common benefit of all of its people.").

In addition to recovery under state and federal statutes and the common law,

where, as here, Youth allege substantial violation and impairment of an essential

---

*Public Trust Doctrine in Public Land Law*, 14 U.C. DAVIS L. REV. 269, 284 (1980).

[4] While the state ownership doctrine enunciated in *Geer* was overruled in *Hughes v. Oklahoma,* 441 U.S. 322, the Supreme Court actually advanced the proposition that the state has a duty to exercise the legitimate public concerns for conservation, protection, and regulation of wildlife. The District Court for the Eastern District of Virginia later stated, in a decision allowing the state to recover damages from a vessel owner for damage to migrating water fowl: "Under the public trust doctrine, the State of Virginia and the United States have the right and the duty to protect and preserve the public's interest in natural wildlife resources. Such right does not derive from the ownership of the resources but from a duty owing to the people. " *In re Complaint of Steuart Transp. Co.*, 495 F. Supp. 38, 40 (E.D. Va. 1980).

national resource, Youth are *separately* entitled to recovery under the

Constitution.[5]

Because Youth allege the Public Trust Doctrine arises under the

Constitution, the District Court cannot avoid its obligation to decide Youth's

claims for relief as to whether Government has complied with its duty to protect

the trust *res*.  In *Zivototsky v. Clinton*, 566 U.S. --, 132 S. Ct. 1421, 1427 (2012),

the Supreme Court stated: "In general, the Judiciary has a responsibility to decide

cases properly before it, even those it 'would gladly avoid.'"  The Court goes on to

state: "That duty will sometimes involve the '[r]esolution of litigation challenging

the constitutional authority of one of the three branches,' but courts cannot avoid

---

[5] In his dissent in *Alabama v. Texas*, Justice Douglas explained the public trust involving our Nation's coastline:

> [W]e are dealing here with incidents of national sovereignty.  The marginal sea is not an oil well; it is more than a mass of water; it is a protective belt for the entire Nation over which the United States must exercise exclusive and paramount authority.  The authority over it can no more be abdicated than any of the other great powers of the Federal Government.  It is to be exercised for the benefit of the whole.
> * * *
> Could Congress cede the great Columbia River or the mighty Mississippi to a State or a power company?  I should think not.  For they are arteries of commerce that attach to the national sovereignty and remain there until and unless the Constitution is changed.  What is true of a great river would seem to be even more obviously true of the marginal sea.  For it is not only an artery of commerce among the States but the vast buffer standing between us and the world.

*Alabama v. Texas*, 347 U.S. 272, 282 (1954).

their responsibility . . . ." *Id.* at 1428.[6]  The Constitution confers independent

jurisdiction on this Court to adjudicate questions of national character arising under

the Public Trust Doctrine, including matters regarding the atmosphere.  Failure to

exercise this jurisdiction by denying Youth the opportunity for hearing on the

merits constitutes a miscarriage of justice.

### B.     The Public Trust Doctrine Arises Under the Constitution

The District Court erred in summarily dismissing Youth's constitutional

claims.  The Reserved Powers Doctrine and the Preamble provides constitutional

support for Youth's assertion of rights under the Public Trust Doctrine against the

federal sovereign.  Youth's Amended Complaint also invokes Government's duties

as trustees of public trust resources pursuant to the Fifth Amendment's Due

Process Clause, the Equal Protection principles of the Fifth Amendment, and the

Article I Commerce Clause powers.  A069.

### 1.     Sovereign Reserved Powers

The Supreme Court has recognized "the power of governing is a trust

committed by the people to the government, no part of which can be granted

---

[6] "[A]bsent the 'clearest command,'" Congress should not be assumed to restrict
the equitable powers of the federal courts.  *Holland v. Florida*, 560 U.S. 631, 130
S. Ct. 2549, 2560 (2010).  The "essence" of a court's equity power "lies in its
inherent capacity to adjust remedies in a feasible and practical way to eliminate the
conditions or redress the injuries caused by unlawful action," and "equitable
remedies must be flexible if these underlying principles are to be enforced with
fairness and precision."  *Freeman v. Pitts*, 503 U.S. 467, 487 (1992).

away." *Stone v. Mississippi*, 101 U.S. 814, 820 (1879).  The Constitution vests all federal legislative power in Congress.  U.S. Const. art. I, § 1.  Since the time of Chief Justice Marshall, Article I has been construed as a limitation on congressional authority to divest sovereign powers.  *See Fletcher v. Peck,* 10 U.S. 87, 135 (1810) ("[O]ne legislature cannot abridge the powers of a succeeding legislature.").  Because the Public Trust Doctrine is an attribute of sovereignty,[7] Congress is constrained by the Reserved Powers Doctrine from abrogating their public trust obligations.  *See*, *e.g.*, *Reichelderfer v. Quinn,* 287 U.S. 315, 318 (1932) ("[T]he will of a particular Congress ... does not impose itself upon those to follow in succeeding years.").

As an attribute of sovereignty, public trust obligations are grounded in the Constitution by the Reserved Powers Doctrine.  *See* Douglas L. Grant, *Underpinnings of the Public Trust Doctrine: Lessons from Illinois Central Railroad*, 33 ARIZ. ST. L.J. 849, 874-879 (2001).  A sovereign's public trust obligations are rooted in a legislature's inability to bind future legislatures in matters of crucial public concern.  *See Ill. Cent. R.R. v. Illinois,* 146 U.S. 387, 455 (1892) ("[S]uch property is held by the state, by virtue of its sovereignty, in trust

---

[7] *See*, *e.g.*, *Geer v. Connecticut*, 161 U.S. 519, 527 (1896) (the sovereign trust over wildlife resources is an "attribute of government"); *Ill. Cent. R.R. v. Illinois,* 146 U.S. 387, 455 (1892); *Arnold v. Mundy*, 6 N.J.L. 1, 76-77 (N.J. 1821); *In Re Waihole Ditch*, 9 P.3d 409, 443 (Haw. 2000) ("[H]istory and precedent have established the public trust as an inherent attribute of sovereign authority. . . .").

20

for the public.  The ownership of the navigable waters of the harbor, and of the

lands under them, is a subject of public concern to the whole people of the state.

The trust with which they are held, therefore, is governmental, and cannot be

alienated . . . .”).  The Court in *Illinois Central R.R.* relied on the Reserved Powers

Doctrine as elaborated in *Newton v. Commissioners*:

> Every succeeding legislature possesses the same jurisdiction and power
> with respect to them as its predecessors . . . All occupy, in this respect,
> a footing of perfect equality. This must necessarily be so in the nature
> of things. It is vital to the public welfare that each one should be able at
> all times to do whatever the varying circumstances and present
> exigencies touching the subject involved may require.

100 U.S. 548, 559 (1879).

The Reserved Powers Doctrine recognizes a fundamental limitation on a

sovereign government’s ability to abridge the power of future legislatures.  By

continuing to abdicate their public trust duties to protect the atmosphere,

Government abridges the power of future legislatures to prevent irreversible harm.

Science tells us that “failure to act with all deliberate speed in the face of the clear

scientific evidence of the danger functionally becomes a decision to eliminate the

option of preserving a habitable climate system.”  *Amicus Curiae* Brief of Dr.

James Hansen Supporting Youth, A373. The Reserved Powers Doctrine is a

constitutional underpinning of the Public Trust Doctrine and underscores the

fundamental nature of the federal government’s public trust obligations to both

present and future generations.

21

Our Founders' concern for young people and future generations under our constitutional framework is expressly articulated in the Preamble to the U.S. Constitution:

> *We the People of the United States*, in order to form a more perfect Union, establish justice, insure domestic tranquility, provide for the Common defence, promote the general Welfare, and secure the Blessings of Liberty *to ourselves and our posterity, do ordain and establish this Constitution* for the United States of America.

U.S. Const. pmbl.

The Supreme Court has long recognized that "[i]n expounding the Constitution . . . *every* word must have its due force; for it is evident from the whole instrument, that no word was unnecessarily used, or needlessly added." *Holmes v. Jennison*, 39 U.S. 540, 570-71 (1840) (emphasis added). In fact, the Preamble proclaims the ultimate ends for which the entire constitutional framework was established. It includes words of reaffirmation of the present generation's responsibility to present and future generations.

The Preamble's role in Constitutional construction in accord with Story's *Commentaries* is that: "It is properly resorted to, where doubts or ambiguities arise upon the words or the enacting part . . . . Its true office is to expound the nature, and extent, and application of the powers actually conferred by the constitution . . . ." J. Story, *Commentaries of the Constitution of the United States*, §§ 459, 462 (2d ed. 1885); *see also Jacobson v. Massachusetts*, 197 U.S. 11, 22 (1905). The

22

Posterity clause of the Preamble indicates that future generations are beneficiaries

of the powers, duties, obligations, and rights enumerated elsewhere in the

Constitution.  It follows that all subsequent constitutional provisions should be

construed, where possible, in this intergenerational light.  Jim Gardner,

*Discrimination against Future Generations: The Possibility of Constitutional*

*Limitation*, 9 ENVTL. L. 29, 35, 33 (1978).

## 2.    Due Process Under the Fifth and Fourteenth Amendments

Under the Public Trust Doctrine, citizens have a right to the protection of

essential public natural resources, like air and water, held in trust by the sovereign.

Because the Public Trust Doctrine is an inherent attribute of sovereignty, a

citizen's right to invoke the sovereign's public trust obligations is fundamental to

the relationship between citizens and their government.[8]  This elemental, time-

honored right of the people to use essential natural resources, including the

atmosphere, without having those public natural resources substantially impaired,

should be recognized as a fundamental right to life, liberty, and property protected

by substantive due process.

---

[8]*See Geer*, 161 U.S. at 534 ("[I]t is the duty of the legislature to enact such laws as
will best preserve the subject of the trust, and secure its beneficial use in the future
to the people of the state."); *see also State v. City of Bowling Green*, 313 N.E.2d
409, 411 (Ohio 1974); *Nat'l Audubon Soc'y v. Superior Court*, 658 P.2d 709, 724
(Cal. 1983).

The Due Process Clauses of the Fifth and Fourteenth Amendments protect

such fundamental rights.  U.S. Const. amend. V., XIV.  The Fifth Amendment

obligates the federal government to exercise due process of law in dealing with

fundamental rights granted all citizens.  U.S. Const. amend. V.  "The Due Process

Clause guarantees more than fair process, and the 'liberty' it protects includes

more than the absence of physical restraint. . . . The Clause also provides

heightened protection against government interference with certain fundamental

rights and liberty interests."  *Washington v. Glucksberg*, 521 U.S. 702, 719-20

(1997); *see also Rochin* v. *California,* 342 U.S. 165, 171-72 (1952) ("To believe

that this judicial exercise of judgment could be avoided by freezing 'due process of

law' at some fixed stage of time or thought is to suggest that the most important

aspect of constitutional adjudication is a function for inanimate machines and not

for judges.").

### a.      Fundamental Right

Fundamental rights, although not explicitly enumerated in the text of the

Constitution, are protected by the Constitution if "rooted in the traditions and

collective conscience of the people" and "implicit in the concept of ordered

liberty."  *Glucksberg*, 521 U.S. at 719.  The right to use essential natural resources,

like air and water, without having those public resources substantially impaired

should be recognized as within the rights fundamental to life, liberty, and property

24

protected by substantive due process.  *See Griswold v. Connecticut*, 381 U.S. 479

(1965).  Further, citizens have the right to an adequate remedy to compel the

sovereign to protect those essential natural resources when they have become (or

are in imminent danger of becoming) substantially impaired.  As recently as last

year, the Supreme Court recognized "the public trust doctrine is of ancient origin"

dating back to Roman civil law.  *PPL Montana*, 132 S. Ct. at 1235.

　　　In the Preamble of the Constitution, the Framers stated their intent to protect

the right of the citizens to hold their government accountable to "insure domestic

Tranquility, provide for the common defense, promote the general Welfare, and

secure the Blessings of Liberty to ourselves and our Posterity."  U.S. Const. pmbl.

The Public Trust Doctrine is a necessary limitation on sovereign power to protect

resources too valuable to be disposed of at the whim of a legislature.  *See Ill. Cent.*

*R.R.*, 146 U.S. at 453 ("The state can no more abdicate its trust over property in

which the whole people are interested . . . than it can abdicate its police powers in

the administration of government and the preservation of the peace.").  The

fundamental proposition that the sovereign lacks the power to squander the

resources held in trust for the people is implicit to the concept of ordered liberty.[9]

---

[9] The liberty interests preserved by the Due Process Clause include "those
privileges long recognized at common law as essential to the orderly pursuit of
happiness by free men."  *Ingraham v. Wright*, 430 U.S. 651, 673 (1977) (internal
quotation marks omitted).  The Supreme Court recognized that "[n]o right is held
more sacred, or is more carefully guarded… than the right of every individual to

Taken together, these authorities demonstrate that the right to use essential natural resources, without having those resources substantially impaired is so deeply rooted as to be fundamental.[10]

### b.  Affirmative Duties Imposed by Due Process Protection

Youth's constitutional liberty interests are being violated by government inaction in protecting and restoring the balance of the atmosphere.[11]  This inaction

___

the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. Ry. v. Botsford,* 141 U.S. 250, 251 (1891).  Although threats to personal security usually arise in the context of government imposed punishment or physical restraint, courts have not limited protection of this historic interest to those settings. *Winston v. Lee*, 470 U.S. 753, 764-66 (1985).  Individuals have "a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity, and this right is fundamental . . . the magnitude of the liberty deprivation that [the] abuse inflict upon the victim… strips the very essence of personhood." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 506-07 (6th Cir. 1996).

[10] The United States' arguments in 1893 in the Tribunal of Arbitration illustrate the deep roots of the public trust duty: "The earth was designed as the permanent abode of man through ceaseless generations.  Each generation, as it appears upon the scene, is entitled only to use the fair inheritance.  It is against the law of nature that any waste should be committed to the disadvantage of the succeeding tenants. . . . That one generation may not only consume or destroy the annual increase of the products of the earth, but the stock also, thus leaving an inadequate provision for the multitude of successors which it brings into life, is a notion so repugnant to reason as scarcely to need formal refutation." Argument of the United States, *Fur Seal Arbitration* (U.S. v. Gr. Brit. 1893), *reprinted in* 9 Fur Seal Arbitration: Proceedings of the Tribunal of Arbitration (Gov't Printing Office 1895); also reprinted in 1 John Bassett Moore, History and Digest of the International Arbitrations to Which the United States Has Been A Party 755, 813-14 (1898).

[11] "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams,* 474 U.S. 327, 331 (1986).  By deliberately deciding not to

is a violation of constitutionally protected rights of citizens and is redressable by this Court.  In *Marbury v. Madison*, 5 U.S. 137 (1803), Marbury was denied his commission as justice of the peace.  Marbury alleged that, once granted, he had a constitutional right to have and retain the commission.  The Supreme Court not only found he had a constitutional right to the commission but held the denial was actionable to enforce the constitutional right.  "The government of the United States has been emphatically termed a government of laws, and not men.  It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right."  *Id.* at 163.  The Fifth and Fourteenth Amendments provide a vested right of life, liberty, and property that is being violated by Government's inaction.  Such inaction results in the damaging allowance of GHG emissions that is causing the imbalance in our atmosphere.[12]

_____

develop and implement a comprehensive national climate recovery plan based on science, the Amended Complaint alleges Government has abrogated its duties under the public trust to prevent substantial impairment to the essential resources that Government holds in trust for citizens.  *See* A036-37, ¶ 10; A047-50, ¶¶ 53-65; A070, ¶¶ 145-150.

[12] *See City of Los Angeles v. NHTSA,* 912 F.2d 478, 501 (D.C. Cir. 1990) (Wald, C.J., dissenting) ("[W]e cannot afford to ignore even modest contributions to global warming.  If global warming is the result of the cumulative contributions of myriad sources, any one modest in itself, is there not a danger of losing the forest by closing our eyes to the felling of the individual trees?"), *overruled on other grounds by Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996); *see also Massachusetts v. Envtl. Prot. Agency*, 549 U.S. 497, 508, 521 (2007) (describing how "the scientific understanding of the climate change [has] progressed" since the 1970s and discussing the evidence showing that "[t]he harms associated with climate change are serious and well recognized.")

When government refuses to act on its best science and thereby violates fundamental rights of its citizens, such refusal is actionable.[13]

Additionally, Government's constitutional duties under the Public Trust Doctrine are analogous to the "special relationship" of dependence and danger in which the Due Process clause imposes affirmative duties on government actors. When a government agent has a "special relationship" with any of its citizens, due process jurisprudence finds such agents have affirmative duties to protect. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198 (1989) ("[I]n certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection. . . .").[14]  The public trust is based upon an analogous "special relationship" between citizens and the federal government. Youth, as well as future generations, are at the mercy of Government's

---

[13] School segregation is the best example of a social problem that was ignored until the judiciary intervened.  *See Brown v. Board of Education*, 347 U.S. 483 (1954). For the background of *Brown*, *see* RICHARD KLUGER, SIMPLE JUSTICE; THE HISTORY OF *BROWN V. BOARD OF EDUCATION* AND BLACK AMERICA'S STRUGGLE FOR EQUALITY (1976).  The Arkansas prison litigation, in which prisoners repeatedly brought suit to improve prison conditions, provides an additional example.  *See, e.g.*, *Holt v. Sarver*, 309 F. Supp. 362, 368 (E.D. Ark. 1970), *aff'd,* 442 F.2d 304 (8th Cir. 1971).

[14] As Justice Brennan observed in his dissent in *DeShaney*, 489 U.S. at 205: "Cases from the lower courts also recognize that a State's actions can be decisive in assessing the constitutional significance of subsequent inaction. For these purposes, moreover, actual physical restraint is not the only state action that has been considered relevant. *See, e.g., White v. Rochford,* 592 F.2d 381 (7th Cir. 1979) (police officers violated due process when, after arresting the guardian of three young children, they abandoned the children on a busy stretch of highway at night)."

management (or failure to manage) public trust resources.  Youth are powerless to

protect these vital resources.  Moreover, just as an injured prisoner is in grave

danger, so too are these Youth as alleged in the Amended Complaint.  Allowing

the loss of a habitable climate system is a breach of the constitutional trust

relationship between Government and its citizens.  At its core, the Constitution

requires the federal government be accountable to its citizens for its obligations.

Youth's rights under Government's public trust duties are protected by the Due

Process Clause of the Fifth Amendment.

When Government establishes a "special relationship" with a person, "[t]he

affirmative duty to protect arises not from the State's knowledge of the

individual's predicament or from its expressions of intent to help him, but from the

limitation which it has imposed on his freedom to act on his own behalf."

*DeShaney*, 489 U.S. at 200.  Here, Government, by its inaction, is abrogating

Youth's freedom to act on their own behalf to prevent irreparable harm to the

atmosphere.  Youth are powerless to take action to mitigate the potentially

catastrophic changes being caused by GHG emissions.  Government has the

authority to act and, based on the allegations in the Amended Complaint, the

Public Trust Doctrine obligates them to take action.

By abrogating their public trust obligations, Government violates Youth's

fundamental rights to life, liberty, and property.  Due Process requires Government

29

to fulfill their public trust obligations to protect the atmosphere[15] – an essential

national resource held in trust for the people.

### 3.    Equal Protection

Government also has violated Youth's Fifth Amendment guarantee of equal

protection of the laws.  As federal actors, Government is constitutionally bound to

afford citizens the equal protection of the laws.  *Weinberger v. Wiesenfeld*, 420

U.S. 636, 655 (1975) ("This Court's approach to Fifth Amendment equal

protection claims has always been precisely the same as to equal protection claims

under the Fourteenth Amendment.").  By continuing to abrogate their public trust

duties to protect the atmosphere from irreparable harm, Government is creating a

situation where certain adults are insulated from serious harm, while our youth are

disproportionately impacted.[16]

---

[15] In its sovereign capacity, "the state has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain."  *Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 237 (1907).  The domain of the federal government extends across the United States and its territories and includes the airshed as well as the waters.

[16] The point is best illustrated by an opinion of the Supreme Court issued during World War II, in *Bd. of Educ. v. Barnette* 319 U.S. 624 (1943).  In *Barnette*, the Supreme Court ruled that students who were Jehovah's Witnesses could not be compelled to pledge allegiance to and salute the American flag.  Justice Robert Jackson eloquently stated:  "the very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts.  One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental

In fact, various jurisdictional guidelines developed by the courts and articulated by scholars support the conclusion that Youth can and should be treated as a "suspect" class. *See In re Griffiths*, 413 U.S. 717 (1973); *United States v. Carolene Prods. Co*., 304 U.S. 144, 152 n.4 (1938). Under those guidelines, extraordinary intergenerational harms should be recognized as unconstitutional infringements upon their "fundamental interests."[17]

Youth cannot vote and are unable to use the polling place to hold their elected officials accountable for this harm. "Central both to the idea of the rule of law and to our own Constitution's guarantee of equal protection is the principle that government and each of its parts remain open on impartial terms to all who seek its assistance." *Romer v. Evans*, 517 U.S. 620, 633 (1996). The legislative and executive branches, co-trustees of the sovereign public trust, are not open to Youth on any, much less impartial, terms. Youth's dearth of available legal redress in the face of irreparable, discriminatory harm is all the more reason why

---

rights may not be submitted to vote; they depend on the outcome of no elections." *Id.* at 638.

[17] Federal courts have the ability to grant appropriate relief when dire constitutional violations require intervention. *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986) ("Congress cannot bar all remedies for enforcing federal constitutional rights.") (internal quotation marks omitted).

31

this Court should remand to the District Court to exercise its equitable powers to allow Youth to seek a lawful remedy.[18]

There are discriminatory consequences of Government's abrogation of their public trust obligation. The Public Trust Doctrine has protected the people's interest in common "property of a special character" throughout our country's history. *Ill. Cent. R.R.*, 146 U.S. at 454. Youth's rights under their trust relationship with Government urgently need protection; yet Youth are denied the protections of these fundamental rights. Our federal government does not exist for the exclusive comparative advantage of those people currently in power, as well as members of a similar age. Youth are deprived of their rights by systematic

---

[18] After finding that a statutory right exists in a particular jurisdiction, a court is well within its power to enforce that right and to oversee its implementation. As long ago as *Marbury v. Madison*, the Supreme Court stated that, "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." 5 U.S. 137, 162 (1803). Moreover, "one of the first duties of government is to afford that protection." *Id.* at 162-63. "Courts of equity have the power "to inquire into and correct mistakes, injustice and wrong in both judicial and executive action… when it invades private rights." *Johnson v. Townsley*, 80 U.S. 72, 84 (1871). The maxim that equity will not suffer a wrong to be without a remedy means courts will intervene where rights are violated:

> [T]he power to enforce the performance of the act must rest somewhere, or it will present a case which has often been said to involve a monstrous absurdity in a well-organized government, that there should be no remedy, although a clear and undeniable right should be shown to exist.

*Kendall v. United States*, 37 U.S. 524, 623 (1838).

discrimination due to their age, and this deprivation is repugnant to the equitable principles of our Constitution.

Such a discriminatory abrogation cannot satisfy even the minimal requirement that a governmental action must be rationally related to a legitimate purpose. *See, e.g.*, *Romer v. Evans*, 517 U.S. 620, 632 (1996) ("In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous."). Those in power cannot take away the right to equal protection of a smaller group. *See, e.g.*, *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984) ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect."). This deprivation of Youth's equal protection of the laws is particularly unjust and worthy of remedy because the numerically and politically disadvantaged group to which they belong is the future of our nation.

### 4. <u>Commerce Clause</u>

The reach of Commerce Clause power under the Constitution supports the scope of the Public Trust Doctrine. U.S. Const. art. I, § 8, cl. 3. Public trust resources such as waterways and the atmosphere are channels of interstate commerce. *See, e.g.*, *Caminetti v. United States*, 242 U.S. 470, 491 (1917) ("[T]he authority of Congress to keep the channels of interstate commerce free from

immoral and injurious uses has been frequently sustained, and is no longer open to

question."). Moreover, courts have recognized that Congress retains authority over

broadcasting frequencies as a public trust, finding broadcasting legislation a clear

indication of congressional acceptance of the Public Trust Doctrine. *See Office of*

*Commc'n of United Church of Christ v. F.C.C.*, 707 F.2d 1413, 1427 (D.C. Cir.

1983) ("The clear intent of the Act was that the award of a broadcasting license

should be a public trust.") (internal quotation marks omitted).

    The atmosphere, more than any land or waterway, is shared amongst the

United States. Accordingly, the atmosphere is rightly within Government's power

to regulate. *See, e.g.*, *United States v. Causby*, 328 U.S. 256, 261 (1946) ("To

recognize such private claims to the airspace would clog these highways, seriously

interfere with their control and development in the public interest, and transfer into

private ownership that to which only the public has a just claim."),

Mismanagement of (or failures to manage) public trust resources through an

abrogation of trust obligations results in substantial impediments on interstate

commerce.

    Government's public trust obligations to protect essential national resources

are analogous to the many other public concerns on a national scale – they are most

effectively managed by the federal government. *See, e.g.*, *Helvering v. Davis*, 301

U.S. 619, 644 (1937) ("The problem is plainly national in area and dimensions.

34

Moreover, laws of the separate states cannot deal with it effectively. Only a power that is national can serve the interests of all.")  As co-trustees of the atmospheric resources of the United States, Government has a duty to prevent substantial impairment to these resources held in public trust.

### III.    Youth Should Have Been Granted Leave to Amend to Plead these Constitutional Issues With Greater Specificity

Despite pleading Public Trust Doctrine claims under the Constitution in the Amended Complaint, Youth were deprived of an opportunity to fully brief the Public Trust Doctrine under the Constitution in opposing the Motions to Dismiss. The public retains the right to bring actions to enforce the trust when agencies fail to discharge their duties.  Many cases enforcing the Public Trust Doctrine have been brought by private parties to prevent agencies from abandoning or neglecting the rights of the public with respect to resources subject to the public trust.  *See, e.g.*, *Ill. Cent. R.R.*, 146 U.S. 387 (1892). [19]   A federal question, per 28 U.S.C. §

---

[19] The right of citizens to hold the government responsible to protect the public trust also finds support in academic literature.  *E.g.*, A. REITZE, JR. ENVIRONMENTAL LAW, ch. 5, 32 (2d ed. 1972) ("The public trust doctrine holds that the government has a duty to all citizens to protect the Nation's natural resources for them as their trustee.  If the government does not act to protect these resources as a trustee a court action may be instituted by a citizen."); Bernard S. Cohen, *The Constitution, The Public Trust Doctrine, and the Environment* 1970 UTAH L. REV. 388, 392 ("The failure to carry out the obligations of the trust amounts to a breach of constitutionally protected rights which no court can permit.").

1331, exists in the instant matter and affords the District Court jurisdiction to hear Youth's case.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Youth respectfully requested leave to amend their complaint if the District Court found their claims to be inadequately pled.  *See* Tr. of Oral Arg. on Motions to Dismiss, A382, at 75:24; Youth Mot. for Reconsideration, A383.  Granting leave to amend under Federal Rule of Civil Procedure 15(a)(2) should be "freely" given "when justice so requires" and "this mandate must be heeded."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Government has no ground to claim it would be prejudiced in any way by granting leave to amend in this important case.  Should the Court find the current Amended Complaint inadequate, Youth respectfully request the Court vacate the Order granting Government's and Industry's Motions to Dismiss and grant leave for Youth to amend their complaint.

Despite pleading their Public Trust Doctrine claims under the Constitution in the Amended Complaint, the District Court failed to address Youth's constitutional claims in its Memorandum Opinion, dismissing Youth's Amended Complaint and providing no grounds for denying Youth's request for leave to amend.  Citing the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178, 182 (U.S. 1962), the *Firestone* Court held:

> [W]hile the decision to grant or deny leave to amend is within the trial court's discretion, "**outright refusal to grant the leave without any**

> **justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.**"  We too have emphasized that a **proper exercise of discretion requires that the district court provide reasons**.  *See Parker v. Baltimore & Ohio R.R.,* 209 U.S. App. D.C. 215, 652 F.2d 1012, 1018, 1020 (D.C. Cir. 1981) (reversing district court's denial of leave to amend, and remanding to the district court either to grant plaintiff leave to amend or provide sufficient reasons for its denial).

*Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (emphasis added).

Dismissal with prejudice is the exception, not the rule, in federal practice because it "operates as a rejection of the plaintiff's claims on the merits and [ultimately] precludes further litigation of them."  *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (quotation marks and citation omitted); *Kreiger v. United States Dep't of Justice*, 529 F. Supp.2d 29, 39 (D.D.C. 2008); *see also Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538, 130 S. Ct. 2485, 2494 (2010) (noting "the preference expressed in the Federal Rules of Civil Procedure . . . for resolving disputes on their merits").  Accordingly, the "standard for dismissing a complaint with prejudice is high: 'dismissal with prejudice is warranted only when the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Belizan*, 434 F.3d at 583 (quoting *Firestone*, 76 F.3d at 1209).  That exacting standard was not met here.

There exists no appropriate reason to deny Youth leave to amend their complaint.  *See Atchinson v. Dist. of Columbia*, 73 F.3d 418 (D.C. Cir. 1996)

37

(while a district court has discretion to grant or deny leave to amend complaint, leave should ordinarily be freely granted in the absence of any apparent or declared reason for denial).  Amendment here is justified in that giving Youth leave to amend does not arise from bad faith or undue delay, is not futile, and does not risk prejudice to Government or Industry.  *See Firestone*, 76 F.3d at 1208.  Given the liberal standard governing pleading amendments, the burden is ordinarily on the party *opposing* the right to amend to demonstrate why a plaintiff should not be allowed to amend her complaint.  *Id.* at 1209 (criticizing district court's "complete failure" to explain grounds for denying leave to amend).

Youth, both as citizens and as beneficiaries, should be permitted to bring an action under our Constitution, to place on the state the responsibility to enforce the trust when the appropriate sovereign agencies fail to do so.  Youth have the right to insist that the state, through its appropriate agencies, protect and preserve public trust resources, including our atmosphere.  Accordingly, if this Court finds Youth improperly pled their Public Trust Doctrine claims under the Constitution, Youth should be afforded leave to amend their Amended Complaint.

## IV.    The District Court Incorrectly Found the Public Trust Doctrine is *Only a Matter of State Law Based on the Decision in PPL Montana, LLC v. Montana.*

The existence of the federal Public Trust Doctrine was not an issue before the Supreme Court in *PPL Montana*.  The Supreme Court did not hold the Public Trust Doctrine is not both an element of federal law and state law nor that the

federal public trust is not based on the federal Constitution.  *PPL Montana* did not address rights and obligations under the federal Public Trust Doctrine nor did it address the atmosphere as a federal public trust resource.  However, in the court below, Industry and their *Amici* fundamentally misstated the legal issue presented in *PPL Montana* and the Supreme Court's discussion, in *dicta*, of Montana's Public Trust Doctrine.  *See Amicus Curiae* Brief in Support of Industry's Motion to Dismiss, A381 (claiming that "[t]he most recent decision to address whether a federal public trust doctrine exists is the U.S. Supreme Court's ruling in *PPL Montana* . . . ."); *PPL Montana*, 132 S. Ct. at 1234-35.  In turn, the District Court erred in accepting Industry's interpretation of *PPL Montana*, without the benefit of briefing by Youth or Government.[20]  Because *PPL Montana* does not foreclose the court's jurisdiction, the District Court's dismissal of Youth's case based on *PPL Montana* should be reversed.

## A.  *PPL Montana* Did Not Address the Federal Public Trust Obligation

The existence of the federal Public Trust Doctrine was not before the Supreme Court in *PPL Montana*.  Nor was the constitutional basis for the federal

---

[20] Youth's motion for leave to file a brief discussing *PPL Montana* was denied on May 4, 2012 in a Minute Order.  A026.  *PPL Montana* was raised for the first time in Industry's consolidated reply brief on Delta's motion to dismiss and the late-filed Industry *Amicus* brief.  A378-81.  The fact that the District Court based its decision to dismiss Plaintiffs' claim on *PPL Montana*, without allowing Youth the opportunity to brief the issue was manifest injustice requiring reversal of the court's dismissal order.  *See Marbury Law Grp. v. Carl*, 729 F.Supp.2d 78, 83 (D.D.C. 2010).

Public Trust Doctrine considered or addressed by either the parties or the Supreme

Court.  The legal issue presented in *PPL Montana* was narrow: whether the State

of Montana held title to the beds of certain rivers in Montana under the federal

equal footing doctrine,[21] based on the navigability of the waters at the time of

statehood.  *PPL Montana*, 132 S. Ct. at 1226.  *PPL Montana* was about whether

the need to portage boats at the time of statehood defeated navigability for

purposes of establishing state title.  Justice Kennedy's decision clearly stated the

sole holding: "[T]his Court now concludes, contrary to the Montana Supreme

Court's decision, that the 17-mile Great Falls reach, at least from the head of the

first waterfall to the foot of the last, is not navigable for purposes of riverbed title

under the equal-footing doctrine."  *Id.* at 1232.

The Supreme Court's analysis in *PPL Montana* involved only issues of

navigable waters located entirely within Montana and the State's ability to tax a

power company for its use of the riverbeds for hydro-electric dams.  Montana had

claimed title to the riverbeds under the equal footing doctrine.  *Id.* at 1222.

Applying a segment-by-segment approach, the U.S. Supreme Court held the

Montana Supreme Court did not apply the correct test for navigability under the

equal footing doctrine and the State did not own the bed of stream segments, which

---

[21] The equal footing doctrine gives all states the same rights in submerged lands as
were enjoyed by the original thirteen states. *PPL Montana*, 132 S. Ct. at 1227-28.

were not navigable at the time of statehood.  *Id.* at 1226, 1235.  Thus, the issue

presented in *PPL Montana* did not involve either the state or the federal Public

Trust Doctrines.

     The limited mention in the Court's opinion of the *State* Public Trust

Doctrine responded to Montana's argument that denying it title to the riverbeds at

issue, under the equal footing doctrine, would undermine Montana's *State* Public

Trust Doctrine protecting public access to the waters above the beds for fishing,

navigation, and other recreational uses.  *Id.* at 1234.  In rejecting this argument, the

Supreme Court clarified that the State misapprehended the distinction between the

federal equal footing doctrine and the state Public Trust Doctrine, determining the

former did not control the latter.  *Id.*  While the federal equal footing doctrine

provides the constitutional foundation for the navigability rule of riverbed title, the

Supreme Court held the scope of the State's public trust authority over waters

within the State's borders is an issue of state law, subject to federal regulatory

authority.  *Id.* at 1234-1235; *see also id.* at 1221(e) (syllabus).

     The Supreme Court never held the Public Trust Doctrine is not both an

element of federal law and state law nor that the federal public trust is not based on

the federal Constitution.  *See Amicus Curiae* Brief in Support of Industry's Motion

to Dismiss, A381; *see also* Industry Consolidated Reply in Support of Motions to

Dismiss, A378-79.  Indeed, whether there is a federal Public Trust Doctrine and

whether it is rooted in the Constitution was not presented to, argued before, or decided by the Supreme Court. *See PPL Montana*, 132 S. Ct. at 1222.[22]  Montana did not assert harm to *federal* public trust authority, but to its *State* public trust authority. *Id.* at 1234-1235.  The Supreme Court referred to only the *State*'s authority when it noted that "[t]he contours of *that* public trust do not depend upon the Constitution." *Id.* at 1235 (emphasis added).

In fact, the Supreme Court's holding in *PPL Montana* is entirely consistent with more than a century of public trust law, finding: the Public Trust Doctrine "is of ancient origin" dating back to Roman civil law; the Public Trust Doctrine is found in state laws throughout our nation; and federalist principles of our nation affirm the state's rights and duties over public trust resources within their borders. *Id.* at 1234-35.  These statements are entirely consistent with the principle that the *federal* public trust obligation runs concurrent with *State* public trust authority. The District Court's decision to adopt Industry's interpretation of *PPL Montana* radically alters Public Trust Doctrine jurisprudence, and even Government's own understanding of its public trust authority.[23]

---

[22] Justice Kennedy describes the question presented: "whether discrete, identifiable segments of these rivers in Montana were nonnavigable, as federal law defines that concept for purposes of determining whether the state acquired title to the riverbeds underlying those segments, when the State entered the Union in 1889." *PPL Montana*, 132 S. Ct. at 1222.

[23] Government has historically asserted its authority under the *federal* Public Trust Doctrine. *See, e.g.*, *In re Complaint of Steuart Transp. Co.*, 495 F. Supp. 38 (E.D.

42

**B.**    **The Supreme Court Briefing in *PPL Montana* Contradicts the Reading of the Decision by both Industry and the District Court**

Examination of both the decision of the Montana Supreme Court and briefing before the U.S. Supreme Court shows support for Youth's position here, as well as undermines Industry's contentions, on which the District Court relied. The Montana Supreme Court held the riverbeds in question were public trust lands pursuant to the Montana State Constitution, which directs the public trust authority of the state. The Montana Supreme Court held:

> We reverse the District Court's determination that the riverbeds are school trust lands, and *hold instead that they are public trust lands under Article X, Section 11(1) of the Montana Constitution* . . . the Land Board is still required to administer these lands in accordance with the trust obligations imposed by Article X, Section 11 of the Montana Constitution. As such, the riverbeds are held "in trust for the people" and shall not "ever be disposed of except in pursuance of general laws providing for such disposition, or until the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, has been paid or safely secured to the state." Mont. Const. Art. X, § 11(2); *See Norman v. State,* 597 P.2d 715, 718 (Mont. 1979).

---

Va. 1980); Congressional declaration of national public trust duty in the National Environmental Policy Act, 42 U.S.C. § 4331(b)(1) ("[I]t is the continuing responsibility of the Federal Government to use all practicable means . . . to improve and coordinate Federal plans, functions, programs, and resources to the end that the Nation may . . . fulfill the responsibilities of each generation as trustee of the environment for succeeding generations."); *supra,* note 10; U.S. Department of Commerce, National Oceanic and Atmospheric Administration on Public Trust Doctrine, A372 ("A distinct characteristic of the American Public Trust Doctrine is that federal and state governments exercise concurrent authorities over Public Trust interests."); *see also* Michael C. Blumm & Mary Christina Wood, The Public Trust Doctrine in Environmental and Natural Resources Law (2013) Chapter 11, at 333-342, 349-365.

*PPL Montana, LLC v. State*, 229 P.3d 421, 450 (Mont. 2010) *rev'd & remanded,*

132 S. Ct. 1215 (2012) (emphasis added).  From the district court to the Montana

Supreme Court, the only public trust issue raised was under the Montana State

Constitution, not the U.S. Constitution.

Notably, in Petitioner PPL Montana's 34-page opening brief to the U.S.

Supreme Court, it never once mentioned the words "public trust."  *See* Brief for

Petitioner, *PPL Montana, LLC v. Montana*, 132 S. Ct. 1215 (2012) (No. 10-218),

2011 WL 3894396 (Aug. 31, 2011).  In Respondent State of Montana's brief, the

State linked its State constitutional public trust authority to the navigability test

under the equal footing doctrine and argued the riverbed lands were a public trust

by virtue of the river's navigability.  Brief for Respondent, *PPL Montana, LLC v.*

*Montana*, 132 S. Ct. 1215 (2012) (No. 10-218), 2011 WL 5126226, at *1 (Oct. 27,

2011).  In its reply brief on the public trust issue, Petitioner PPL Montana argued:

> Nor does this case threaten the public trust. The Court concluded long ago that it "cannot be pretended that private ownership" of riverbeds, "subject to the public rights" of navigation and fishing, "will impair the interest of the public."  *United States v. Chandler-Dunbar Water Power Co.,* 209 U.S. 447, 452 (1908).

Reply Brief for Petitioner, *PPL Montana, LLC v. State of Montana*, 132 S. Ct.

1215 (2012) (No. 10-218), 2011 WL 6007003, at *3 (Nov. 28, 2011).

Thus, the briefing before the U.S. Supreme Court did not address whether

there was a U.S. constitutional basis for the federal Public Trust Doctrine, or

whether a federal public trust obligation even exists.  The public trust interests at

stake in *PPL Montana* were raised only pursuant to the Montana State

Constitution.  The State public trust issue implicated a discussion of the U.S.

Constitution only because the State of Montana argued the equal footing doctrine's

navigability test was linked to the State's public trust rights.  In a simple rejection

of that assertion, Justice Kennedy wrote: "the public trust doctrine remains a matter

of state law . . . the contours of *that* public trust do not depend upon the

Constitution."  *PPL Montana*, 132 S Ct. at 1235 (emphasis added).  Justice

Kennedy plainly meant: "the [Montana Constitutional] public trust doctrine

remains a matter of state law . . . the contours of that [State] public trust do not

depend upon the [U.S.] Constitution."  *Id.*  Nothing could be clearer about the

meaning of the Court's language when the case and the underlying briefing and

opinions are read in their entirety.

### C.    The District Court's Interpretation of PPL Montana Runs Contrary to Public Trust Doctrine Law in the United States

To dismiss Youth's claim of a federal Public Trust obligation based on this

limited dicta, taken out of context, is legal error, particularly in light of federal case

law affirming the federal Public Trust Doctrine.  *See In re Complaint of Steuart*

*Transp. Co.*, 495 F. Supp. 38 (E.D. Va. 1980); *United States v. 1.58 Acres of Land*,

523 F. Supp. 120 (D. Mass. 1981); *City of Alameda v. Todd Shipyards Corp.*, 635

F. Supp. 1447 (N.D. Cal. 1986); *United States v. 32.42 Acres of Land*, 683 F.3d

1030 (9th Cir. 2012).

Likewise, the U.S. Supreme Court cases cited by Justice Kennedy do not disavow the federal Public Trust Doctrine. Those cases analyzed state public trusts. Even so, the Supreme Court has recognized the broad implications of *Illinois Central Railroad* by stating that even though *Illinois Central* was "necessarily a statement of Illinois law," "the general principle and the exception have been recognized the country over." *Appleby v. City of New York*, 271 U.S. 364, 395 (1926); *see also Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 285 (1997). Each of these Supreme Court decisions recognizes the public trust obligation goes hand in hand with sovereignty. Thus, any court denying the United States government has a public trust obligation would have to explain how the federal sovereign is exempted from a duty that all other sovereigns of our nation hold.

In *Shively v. Bowlby*, the Supreme Court said states were vested with all the rights from the crown, including the public trust, subject to the rights surrendered to the national government, including public trust rights over national resources:

> The various charters granted by different monarchs of the Stuart dynasty for large tracts of territory on the Atlantic coast conveyed to the grantees both the territory described and the powers of government, including the property and the dominion of lands under tide waters; and, upon the American Revolution, all the rights of the crown and of parliament vested in the several states, subject to the rights surrendered to the national government by the constitution of the United States.

152 U.S. 1, 14-15 (1894). In many situations, a state's public trust rights might afford sufficient protections. However, when an essential natural resource,

46

essential for both the physical livelihood of all citizens of our country and the

liberty to fulfill that life is being substantially impaired, the federal public trust is

invoked.  It is a national obligation intended by our forefathers to control

operations of the federal government under the terms of the Constitution, as set

forth above, and in furtherance of the protection of all citizen's fundamental rights.

Thus, in relying on *PPL Montana* and stating it "appears" the Supreme Court held

there is no federal Public Trust Doctrine, the District Court erred.


**V.    The Questions of Whether there is a Constitutional Public Trust, Whether Fundamental Rights are at Issue, and Whether Those Constitutional Rights are Violated Are Legal Questions That Cannot be Displaced by any Statute Enacted by Congress.**

Government and Industry argued, and the District Court held, that Youth's

claims are legislatively displaced by the Clean Air Act, relying on the Supreme

Court's decision in *AEP v. Connecticut*, 131 S. Ct. 2527 (2011); District Court's

Memorandum Opinion on the Motion to Dismiss, A081.  In *AEP*, the Supreme

Court explained: "'[w]hen Congress addresses a question previously governed by a

decision rested on *federal common law*, . . . the need for such an unusual exercise

of law-making by federal courts disappears.'" *AEP*, 131 S. Ct. at 2537 (quoting

*Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981)) (emphasis added).  "The test for

whether congressional legislation excludes the declaration of federal common law

is simply whether the statute 'speak[s] directly to [the] question' at issue." *AEP*,

47

131 S. Ct. at 2537 (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)).

The judicial doctrine of displacement cannot be applied here to dismiss Youth's case for two fundamental reasons: (1) Youth raise constitutional claims not subject to displacement; and (2) the Clean Air Act does not speak to the question presented by Youth's claims.  Moreover, the factual analysis and holding in *AEP* are easily distinguishable from the present case.

### A.  <u>This Is Not a Common Law Case, Even though the Public Trust Doctrine also Derives from Common Law</u>

The doctrine of common law displacement by legislation does not apply to the instant case because, as discussed above, Youth's claim is constitutional and based on a fundamental obligation of the sovereign. Am. Compl., A069, ¶¶ 137, 139-141; *see also supra*, Section I.  Legislative displacement has never been applied to constitutional claims, nor could it be, because legislative authority derives only from the Constitution. In contrast, federal common law is judicially developed to fill the interstices where enacted laws were silent or insufficient to remedy injustices.  *Milwaukee*, 451 U.S. at 336.

The judicial doctrine of displacement acts as a judicial restraint on a court's authority to make common law. Youth do not ask the Court to make common law here.  Thus, there is no need to consider the displacement doctrine.  The District Court erred in not considering Youth's constitutional claims and Government's and Industry's displacement arguments through that proper lens.

**B.     The Clean Air Act Does Not Address Youth's Claims**

Even if the common law displacement doctrine could be expanded to allow

for displacement of constitutional claims, the test set forth by the Supreme Court in

*AEP* would not be met.

Youth claim there is a sovereign constitutional duty to protect the

atmosphere as an essential natural resource.  Youth also claim Government, as

trustee, is violating that fiduciary duty.  Neither of those claims can be answered

by the Clean Air Act.  Indeed, only the court can answer those questions.

Even if the Clean Air Act were deemed one mechanism for fulfilling part of

the trustee's fiduciary duty, the Clean Air Act itself cannot displace the inquiry of

whether the statute or implementation thereof is enough to meet the fiduciary

obligation.  In fact, Youth allege that EPA has not met its fiduciary duty as trustee

to protect the atmospheric resource.  The Clean Air Act does not resolve that

question and displacement of that question would nullify citizen beneficiaries'

rights to enforce the public trust.

Moreover, even if the Clean Air Act were assiduously followed, its structure

is insufficient to address all aspects of the climate crisis and the destruction of the

atmospheric trust resource.  Nor does the Clean Air Act provide for the injunctive

remedy Youth seek in a comprehensive climate recovery plan.  An enacted law can

only displace common law if it addresses the harm precisely.  *See Illinois v. City of*

*Milwaukee*, 406 U.S. 91, 103 (1972).  Because the Public Trust Doctrine is

grounded in the Constitution, this duty cannot be displaced or left for another day.

**C.      The Supreme Court's Opinion in *AEP* Addresses Only a Common Law Nuisance Claim Against "Fossil-Fuel Fired Power Plants"**

Even if Youth's claim were in common law, the Clean Air Act regulates third parties, not the Government trustee, and does not displace the question of whether the trustees have violated their duties.  The District Court's reading of the holding in *AEP* is contrary to the opinion's plain meaning and inconsistent with the "no superfluous words" maxim of judicial interpretation.[24]

In *AEP*, the fossil-fuel fired power plant petitioners advocated that: "Any federal common law climate change cause of action that might have been recognized has been displaced."  Reply Brief for the Petitioners, *AEP*, 131 S. Ct. 2527 (2011) (No. 10-174) 2011 WL 1393804, at *16.  In contrast, the Supreme Court's holding was more narrow: "the Clean Air Act and the EPA actions it authorizes displace any federal common law right to seek abatement of carbon-dioxide emissions *from fossil-fuel fired power plants*."  *AEP*, 131 S.Ct. at 2537 (emphasis added).  Comparing the position of the AEP petitioners in their brief to

---

[24] A well-known canon of construction, that "a legislature is presumed to have used no superfluous words," is applicable here.  *See Platt v. Union Pac. R.R. Co.*, 99 U.S. 48, 58 (1878); *see also Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 698 (1995) (noting a "reluctance to treat statutory terms as surplusage").  A court will presume that no words of a text are superfluous and each word ought to be given meaning if possible.  *Crandon v. U.S.*, 494 U.S. 152, 171 (1990) (finding that words should not be read out of a statute where it changes the meaning of the sentence).

50

the actual decision clarifies how different the *AEP* Court's narrow holding is from what the fossil-fuel fired power plants argued. The important qualification is the modifying clause: "from fossil-fuel fired power plants." The Supreme Court did *not* find displacement of all federal common law claims against federal officials to deal with climate change.

This Court should apply the time-honored canons of judicial interpretation to read the plain meaning of text and not read out words as superfluous. Because Justice Ginsburg included "from fossil-fuel fired power plants" as part of the holding, this language must be interpreted to add meaning to the holding and bears considerable weight in understanding the decision's limited scope. If the holding had read: "that the Clean Air Act and the EPA actions it authorizes displace any federal common law right to seek abatement of carbon-dioxide emissions [period]," it may have been closer to what Government, Industry, and the District Court interpreted it to mean. However, that is not the holding in *AEP*.

"[F]rom fossil-fuel fired power plants" adds specific meaning to the holding. This phrase limits the words "any federal common law right to seek abatement" to actions brought against defendants like the fossil-fuel fired power plants in question. "From" is "used as a function word to indicate…a starting point in a statement of limits." Merriam-Webster, *Webster's Ninth New Collegiate Dictionary* 494 (9th ed. 1988). The plain meaning of "from" confirms the holding

51

in *AEP* was narrower than the District Court stated in its decision to dismiss this case on the alternative ground of displacement. The Clean Air Act displaces a federal common law right to seek abatement of $CO_2$ emissions only "from" defendants like those in the *AEP* case. "From" narrows the displacement of federal common law rights of action to those seeking the direct regulation by the court of the $CO_2$-emitting defendants. Therefore, *AEP* did not decide whether a federal common law right exists to seek abatement of $CO_2$ emissions through governmental action by the agencies entrusted with the duty to protect the atmosphere as a public trust asset.

In other words, Justice Ginsburg's holding cannot fairly be read to say: "that the Clean Air Act and the [Government] actions it authorizes displace any right to seek abatement of carbon-dioxide emissions from [Government]." This point is especially true in light of the Court's fundamental concern that hundreds of lawsuits against private carbon emitters would be unmanageable for the judiciary and that EPA should be deciding how to regulate such emissions. *AEP*, 131 S. Ct. at 2539-40 ("The expert agency is surely better equipped to do the job than individual district judges issuing ad hoc, case-by-case injunctions [against private parties]. Federal judges lack the scientific, economic, and technological resources an agency can utilize in coping with issues of this order."). This is precisely why

Youth have sued their Government.  There is no displacement when Government fails to fulfill its duty to protect Youth's fundamental constitutional rights.

## **CONCLUSION**

For the foregoing reasons, this Court should find that it has subject matter jurisdiction to hear Youth's claims, and that Youth have stated claims under the Constitution for which relief can be granted.  This Court should reverse the Order of the District Court granting the Motions to Dismiss of Government and Industry and remand the matter to the District Court for further proceedings.  Should this Court find Youth's Amended Complaint inadequate, this Court should grant Youth's request for leave to amend their complaint.

Respectfully submitted,

*/s/ Philip L Gregory*
PHILIP L. GREGORY
Cotchett, Pitre & McCarthy, LLP

*/s/ Julia A. Olson*
JULIA A. OLSON
Wild Earth Advocates

*/s/ Thomas J. Beers*
THOMAS J. BEERS
Beers Law Offices

*Counsel for Youth Appellants*

53

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel hereby certifies that, in accordance with Federal Rule of Appellate Procedure 32(a)(7), the foregoing Opening Brief of Youth Appellants complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B), because as counted by counsel's word-processing system, it contains exactly 13,683 words, excluding parts of the brief exempted by Rule 32(a)(7)(B)(iii) and Circuit Rule 32(a)(1).

Counsel also certifies that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) because it was prepared using Microsoft Word in Times New Roman and 14-point font.

Dated: October 22, 2013

*/s/ Philip L Gregory*
Philip L. Gregory

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of October, 2013, I have served the

foregoing Opening Brief on all registered counsel through the Court's Case

Management/Electronic Filing System (CM/ECF).

Dated: October 22, 2013

*/s/ Philip L Gregory*

Philip L. Gregory
