ORAL ARGUMENT NOT YET SCHEDULED

**No. 13-5192**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**ALEC L, et al.,**
*Plaintiff-Appellants,*

*v.*

**GINA McCARTHY, et al.,**
*Defendant-Appellees,*

**THE NATIONAL ASSOCIATION OF MANUFACTURERS, et al.,**
*Intervenors for Defendant-Appellees.*

---

On Appeal from the U.S. District Court for the District of Columbia,
No. 11-cv-02235 (Hon. Robert L. Wilkins)

---

**RESPONSE BRIEF OF APPELLEES GINA McCARTHY, et al.**

---

ROBERT G. DREHER
Acting Assistant Attorney General

DAVID GUNTER
MARTIN F. McDERMOTT
DAVID C. SHILTON
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. Box 7415
Washington, DC 20044
(202) 514-5580
david.shilton@usdoj.gov

## FEDERAL APPELLEES' CERTIFICATE OF COUNSEL

Pursuant to Circuit Rule 28(a)(1), counsel for the Appellees Gina McCarthy, et al. submits this certificate as to parties, rulings, and related cases.

A. <u>Parties and Amici.</u>

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for appellants Alec L, et al.

B. <u>Rulings Under Review.</u>

References to the rulings at issue appear in the Brief of Appellants at iii.

C. <u>Related Cases.</u>

The undersigned counsel is not aware of any related cases pending in the District of Columbia or in any other U.S. Court of Appeals.

Respectfully submitted,

ROBERT G. DREHER
Acting Assistant Attorney General

 s/ David C. Shilton
MARTIN F. McDERMOTT
DAVID C. SHILTON
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. Box 7415
Washington, DC 20044

Dated:  December 23, 2013

ii

# TABLE OF CONTENTS

**PAGE**

GLOSSARY ..........................................................................................................

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION ....................................................................2

STATEMENT OF THE ISSUES ..........................................................................3

STATEMENT OF THE CASE ..............................................................................3

SUMMARY OF ARGUMENT ............................................................................11

STANDARD OF REVIEW ..................................................................................14

ARGUMENT .......................................................................................................14

I.     THE DISTRICT COURT CORRECTLY RULED THAT YOUTH'S
       PUBLIC TRUST CLAIM DID NOT UNDER FEDERAL LAW .......14

       A.     Youth's Public Trust Claim Did Not Arise Under the
              Constitution or Federal Law.................................................15

       B.     No Constitutional Claim Appeared on the Face of the
              Complaint..............................................................................20

       C.     Youth's Claim Of a Constitutional Basis For Alleged Public Trust
              Duties Too Insubstantial To Provide a Basic For Jurisdiction.....24

       D.     Any Claim Of a Right Under Federal Law is Inconsistent With
              The Supreme Court's Decision in *AEP v. Connecticut*....................27

       E.     The District Court Did Not Abuse Its Discretion By Denying
              Leave To Amend The Complaint.......................................29

II.     YOUTH LACK STANDING BECAUSE THE COMPLAINT
        ALLEGED GENERLIZED GIEVANCES RATHER THAN
        INDIVIDUALIZED INJURY CAUSED BY PARTICULAR
        GOVERNMENTAL ACTION AND REDRESSABLE BY A
            COURT ................................................................................32

        A.    The Complaint Fails To Allege Particularized Harm Traceable To
              the Challenged Actions and Redessable By Courts ......................33

        B.    The Complaint Alleges Only Generalized Grievances ................40

CONCLUSION...............................................................................................44

CERTIFICATES.............................................................................................45

# TABLE OF AUTHORITIES

**CASES:**

*Adarand Constructors, Inc. v. Pena,*
515 U.S. 200 (1995)..................................................................................26

*Alabama v. Texas,*
347 U.S. 272 (1954)..................................................................................18

*Alec L. v. Jackson,*
863 F. Supp. 2d 11 (D.D.C. 2012)..........................................................10

*\*Allen v. Wright,*
468 U.S. 737 (1984)............................................................................37, 38

*American Bus Ass'n v. Slater,*
231 F.3d 1, 9 (D.C. Cir. 2000)................................................................40

*\*American Electric Power Co. v. Connecticut,*
131 S. Ct. 2527 (2011)..........................................................2, 11, 27, 28, 42

*Appleby v. City of New York,*
271 U.S. 364 (1926);................................................................................16

*\*Avila v. Pappas,*
591 F.2d 552 (7th Cir. 2010)............................................................25, 27

*Best v. Kelly,*
39 F.3d 328 (D.C. Cir. 1994)..................................................................25

*Bolling v. Sharpe,*
347 U.S. 497 (1954);................................................................................26

*Brigham Oil & Gas, L.P. v. N.D. Bd. of Univ. & Sch. Lands,*
866 F. Supp. 2d 1082 (D.N.D. 2012)......................................................17

Authorities on which we principally rely are marked with an asterisk.

*Carlson v. Principal Fin. Group,*
320 F.3d 301 (2d Cir. 2003). ...................................................................14

*Caterpillar Inc. v. Williams,*
482 U.S. 386 (1987), ...............................................................................21

*Ciralsky v. CIA,*
355 F.3d 661 (D.C. Cir. 2004) ..........................................................29, 30

*Center for Biological Diversity v. U.S. Dept. of the Interior,*
563 F.3d 466 (D.C. Cir. 2009) .................................................................35

*City of Alameda v. Todd Shipyards,*
635 F. Supp. 1447 (N.D. Cal. 1986) .........................................................18

*Collins v. City of Harker Heights,*
503 U.S. 115 (1992). ................................................................................26

*Corson & Gruman Co. v. NLRB,*
899 F.2d 47 (D.C. Cir. 1990)) ..................................................................30

*Dist. of Columbia v. Air Fla., Inc.,*
750 F.2d 1077 (D.C. Cir. 1984) ...........................................1, 15, 17, 19

*Firestone v. Firestone,*
76 F.3d 1205 (D.C. Cir. 1996). ................................................................30

*Fletcher v. Peck,*
10 U.S. 87 (1810) ......................................................................................27

*Geer v. Connecticut,*
161 U.S. 519 (1896) ..................................................................................22

*Gonzales v. Raich,*
545 U.S. 1 (2005) ......................................................................................26

*Gully v. First National Bank,*
299 U.S. 109 (1936). ...................................................................13, 21, 24

vi

*Hagans v. Lavine,*
415 U.S. 528 (1974),..............................................................................25

*Ill. Cent. R.R. Co. v. Illinois,*
146 U.S. 387 (1892).........................................................................15, 22

*In re Steuart Transportation Co.,*
495 F. Supp. 38 (E.D. Va. 1980),.........................................................19

*James Madison Ltd. v. Ludwig,*
82 F.3d 1085 (D.C. Cir. 1996) .............................................................31

*Long Sault Dev. Co. v. Call,*
242 U.S. 272 (1916);..............................................................................16

*\*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ..........................................................32, 34, 35, 40

*\*Massachusetts v. EPA,*
549 U.S. 497 (2007)....................................................13, 33, 34, 36, 38, 42

*Marbury v. Madison,*
5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)..........................................41

*Merrell Dow Pharmaceuticals Inc. v. Thompson,*
478 U.S. 804 (1986).............................................................................22

*New York v. DeLyser,*
759 F. Supp. 982 (W.D.N.Y. 1991) .....................................................17

*Newburyport Water Co. v. Newburyport,*
193 U.S. 561 (1904)..............................................................................25

*Phillips Petroleum Co. v. Mississippi,*
484 U.S. 469 (1988);..............................................................................15

*\*PPL Montana, LLC v. Montana,*
132 S. Ct. 1215 (2012).......................................... 1, 10, 15, 16, 17, 19, 26

vii

*Puerto Rico v. Russell & Co.*,
288 U.S. 476 (1933)..................................................................................23

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574 (1999) ................................................................................32

*Sansotta v. Town of Nags Head*,
724 F.3d 533 (4th Cir. 2013) ..................................................................17

*\*Schlesinger v. Reservists Committee to Stop the War*,
418 U.S. 208 (1974) ................................................................................40

*Shively v. Bowlby*,
152 U.S. 1 (1894) ....................................................................................16

*Shoshone Mining Co. v. Rutter*,
177 U.S. 505 (1900).................................................................................23

*Sierra Club v. Andrus*,
487 F. Supp. 443 (D.D.C. 1980)..............................................................20

*Simon v. Eastern Kentucky Welfare Rights Org.*,
426 U.S. 26 (1976) ..................................................................................37

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009) ................................................................................35

*Sturm, Ruger & Co., Inc. v. Chao*,
300 F.3d 867 (D.C. Cir. 2002). ...............................................................14

*United States v. 1.58 Acres of Land*,
523 F. Supp. 120 (D. Mass. 1981),..........................................................18

*United States v. 32.42 Acres of Land*,
683 F.3d 1030 (9th Cir. 2012),................................................................19

*United States v. 11.037 Acres of Land*,
685 F. Supp. 214 (N.D. Cal. 1988), .........................................................19

viii

*United States v. Badru,*
97 F.3d 1471 (D.C. Cir. 1996) ..................................................................21

*United States v. David,*
96 F.3d 1477 (D.C. Cir. 1996) ..................................................................21

*United States v. Van Smith,*
530 F.3d 967 (D.C. Cir. 2008) ..................................................................30

*Warth v. Seldin,*
422 U.S. 490 (1975) ..................................................................................40

**STATUTES:**

Clean Air Act
42 U.S.C. § 7521(a)(1) ..............................................................................33
42 U.S.C. § 7607(b)(1) ........................................................................ 31, 32

Energy Policy and Conservation Act of 1975
     Public Law 94-163, 42 U.S.C. §§ 6291-6309 ........................................43

Food, Conservation, and Energy Act of 2008
     Public L. 110-246 (2008), 16 U.S.C. § 3844 ..........................................43

42 U.S.C. § 1983 .......................................................................................25

28 U.S.C. § 1291 ......................................................................................3, 4

*28 U.S.C. § 1331 ............................................................................ 2, 14, 32

28 U.S.C. § 1404(a) .....................................................................................3

**RULES and REGULATIONS:**

Wright & Miller, 13D *Fed. Prac. & Proc. Juris.* § 3566 (3d ed., 2013) ...............21

Federal Rules of Civil Procedure 12(b)(1) .................................................. 2, 10

Federal Rules of Civil Procedure 12(b)(6) ........................................................10

Federal Rule of Civil Procedure 59(e) ....................................................11, 29, 30

74 Fed. Reg. 66,496 (2009).........................................................................43

75 Fed. Reg. 17004 (2010).........................................................................43

75 Fed. Reg. 25324 (2010).........................................................................43

75 Fed. Reg. 31514 (2010).........................................................................43

76 Fed. Reg. 9,534 (2011).........................................................................43

76 Fed. Reg. 57106 (2011).........................................................................43

77 Fed. Reg. 62624 (2012).........................................................................43

78 Fed. Reg. 36,316 (2013).........................................................................43

78 Fed. Reg. 40,945 (2013).........................................................................42

# GLOSSARY

| | |
|---|---|
| $CO_2$ | Carbon Dioxide |
| Br. | Appellants' Opening Brief |
| EPA | United States Environmental Protection Agency |
| DOE | United States Department of Energy |
| USDA | United States Department of Agriculture |
| Youth | Plaintiffs-Appellants, Alec L., et al. |

## INTRODUCTION

Five young citizens and two organizations, Kids v. Global Warming and WildEarth Guardians, filed a complaint seeking declaratory relief regarding the federal government's legal duty to take actions necessary to significantly reduce carbon emissions to the atmosphere and injunctive relief imposing extensive obligations on federal agencies to carry out the alleged duties. Youth[1] predicated their demands on the public trust doctrine, an infrequently used state law doctrine whose principal purpose has been to govern state-law property rights in lands submerged beneath tidal and navigable waterways.

Defendants and intervenors filed motions to dismiss on several grounds, including that Youth lacked standing and that their action did not arise under federal law. Acting on these motions, the district court concluded that Youth's claim to enforce an alleged public trust in the atmosphere did not arise under federal law, noting that both the Supreme Court in *PPL Montana, LLC v. Montana,* 132 S. Ct. 1215, 1235 (2012) (*PPL Montana*), and this Court in *Dist. of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1082 (D.C. Cir. 1984), have described the public trust doctrine as a creature of state, not federal law. A079-080. The district court ruled in the alternative that even if it had subject matter jurisdiction to hear a public trust claim to require additional federal efforts to protect the atmosphere against greenhouse gas emissions, that

---

[1] In this brief, we follow appellants' convention of referring to themselves collectively as "Youth." We cite appellants' appendix as "A***."

common law claim would have been displaced by the Clean Air Act. A081-082 (*citing American Electric Power Co. v. Connecticut*, 131 S. Ct. 2527, 2537-38 (2011)).

Youth here assert that the district court erred by finding that their public trust claim did not arise under federal law, but *PPL Montana* clearly stands in the way of that argument. They also assert that the complaint should be read as alleging violations by the federal agencies of rights under the United States Constitution. But the complaint on its face did not allege any constitutional violations, and even if it were construed to have done so, such claims would be patently insubstantial and insufficient to establish federal question jurisdiction. In any event, Youth lacked standing to enforce an alleged public trust in the atmosphere against the defendants, because they failed to allege particularized injury traceable to the challenged conduct of the government agencies and redressable by court decree. Their claim that the agencies owe a trust duty to undertake significant additional actions beyond current efforts to address global warming raised generalized grievances more appropriately addressed by the Legislative and Executive Branches of government.

## STATEMENT OF JURISDICTION

The district court granted the defendants' and defendant-intervenors' motions to dismiss for lack of subject matter jurisdiction, holding that the complaint did not raise a federal question invoking the court's jurisdiction under 28 U.S.C. § 1331. This brief addresses the propriety of that ruling *infra* at 14-27. Appellees also contend as an

2

alternative ground for affirming the dismissal that Youth lacked standing to bring this action. *See infra* at 31-43. This Court has appellate jurisdiction over the district court's final judgment of dismissal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Did the district court correctly conclude that the complaint's single claim for alleged "Violations of the Public Trust Doctrine" did not arise under the Constitution or laws of the United States, since the public trust doctrine is a purely state law doctrine?

2. Did Youth lack standing to bring their public trust claim against government agencies because they failed to allege particularized harm traceable to challenged actions of the government agency defendants, but instead alleged generalized grievances about the conduct of government more appropriately addressed by the Legislative and Executive Branches?

## STATEMENT OF THE CASE

Youth originally brought this action in the United States District Court for the Northern District of California, by filing a complaint seeking declaratory and injunctive relief on May 4, 2011. *Alec L, et al. v. Lisa Jackson, et al.,* CV-11-2203 (N.D. Calif.).[2] Youth filed a First Amended Complaint on July 27, 2011, which was not

---

[2] The case was subsequently transferred to the District of Columbia, pursuant to 28 U.S.C. §1404(a). Dkt. 131.

significantly different from the initial Complaint.[3]  It alleged (¶2) that under "basic

trust principles" the "United States government" has an "affirmative fiduciary

obligation to control atmospheric contamination that has caused catastrophic and

irreparable damage to our lands, businesses, national security, and health."  A034.

Youth asked the court to "immediately" order "the federal government" to "accept its

fiduciary responsibility mandated by the Public Trust Doctrine."  *Id.* ¶9, A036.  They

asked the court to find that the defendant agency heads "by their actions of causing,

approving and allowing too many carbon emissions into Earth's atmosphere,

cumulatively resulting in global heating, ocean acidification, melting icecaps and ice

sheets, biodiversity loss, and extreme weather events have breached and are

continuing to breach their duty as trustees."  *Id.* ¶10, A036.

The complaint's allegations relating to the agency defendants fell into two

general categories.  First, Youth alleged agency failures to properly regulate or to take

actions that Youth asserted would reduce or ameliorate greenhouse gas emissions by

others.  Under this category, Youth alleged violations of trust obligations by:

•       The Environmental Protection Agency (EPA), because it has "failed to

effectively implement and enforce the laws under its jurisdiction" and thus failed to

protect the atmosphere.  *Id.* ¶53.

---

[3] All references in this brief are to the First Amended Complaint found at A030-073.

4

•  The Department of the Interior, for permitting "logging, livestock grazing, off-road vehicle use, the extraction of coal, coal bed methane, oil, oil shale and natural gas, and oil, coal and electric infrastructure and transmission facilities on public land." *Id.* ¶55.

•  The Department of Agriculture, for permitting "large-scale logging in national forests," and for failing to protect "the atmospheric trust from greenhouse gases from farming, agricultural practices, and fossil fuel extraction and use under its jurisdiction." *Id.* ¶57.

•  The Department of Commerce, for failing to protect the atmosphere and "other natural resources under its jurisdiction" "in its efforts to make American industry competitive." *Id.* ¶59.

•  The Department of Energy, for failing to "advanc[e] clean, reliable, and affordable energy to replace fossil fuel sources of energy, which are wasting the trust asset." *Id.* ¶61.

Second, Youth alleged direct agency contributions (through energy consumption and other agency activities) to greenhouse gas emissions.  In this category, the complaint focused on the Department of Defense, which Youth alleged was responsible for "enormous" greenhouse gas emissions from its "vehicle fleet, electricity for buildings, and its weapons infrastructure," and which thus allegedly contributes to "waste of the Public Trust in the atmosphere." *Id.* ¶63.

5

Although Part VI of the complaint was titled "CLAIMS FOR RELIEF," the complaint asserted just one: "Claim I: Violations of the Public Trust Doctrine." A069. Youth contended in that claim that under the public trust doctrine, defendants – as federal agencies and officers – are trustees of "Public Trust resources," including "our atmosphere in its ambient or interstate aspects." *Id.* ¶138-39. They alleged that the United States, "as a sovereign nation," has a duty to protect natural resources that cannot be "abrogated" and exists "[a]s long as the sovereign exists." *Id.* ¶137. They alleged *(id.* ¶¶139-142) that defendants "and each of them" are trustees of public trust resources pursuant to "the Due Process Clauses of the 5th and 14th Amendments," "Equal Protection principles of the 14th Amendment," the "Commerce Clause" and unspecified "statutory provisions committing to the people of the United States that the United States government will hold natural resources in trust for the benefit of the people."

Claim I also alleged that the public trust doctrine obligates defendants to "take all actions necessary to reduce the United States government's fair and equitable share of carbon emissions." A070-71, ¶151. It further asserted that the "check and balance of judicial review" provided a "level of protection against improvident disposition or waste of an irreplaceable trust asset." A071 ¶153. As for subject matter jurisdiction, the complaint alleged that "[t]his action is brought pursuant to the Federal Public Trust Doctrine and the United States Constitution," and that the district court had

6

jurisdiction pursuant to 28 U.S.C. § 1331 "as this action arises under the laws of the United States."  A041.

The Prayer for Relief (A071-73) requested a large number of far-reaching judicial declarations, including that:

• The atmosphere is a "Public Trust resource" (or a "commonly shared Public Trust asset") that the United States government has a fiduciary duty as trustee to preserve and protect;

• Such duty, which includes refraining from "taking actions that waste or damage this asset," is enforceable by plaintiffs "as citizen beneficiaries of the Public Trust" who "represent present and future generations";

• The federal government's obligations must be "dictated by the best available science on protecting a sustainable atmosphere and climate for present and future generations";

• Defendants have violated their duty as trustees of the atmosphere by "contributing to and allowing unsafe amounts" of greenhouse gas emissions into the atmosphere, leading to "human made global warming, ocean acidification, and all of the ramifications associated with the alteration of the atmosphere and Earth's natural systems";

• Defendants "bear liability" for "reducing greenhouse gas pollution into the atmosphere and altering the atmosphere and Earth's natural systems";

7

- "Rapid reduction" of greenhouse gas emissions is needed to preserve "Earth's atmosphere and natural systems," because atmospheric concentrations of $CO_2$ above 350 parts per million, "if sustained beyond this century," are "likely" to cause global warming substantially greater than 1°C above "preindustrial temperatures," and "ocean acidification, massive deglaciation, and disintegration of ice sheets, in addition to widespread harm to Earth's natural systems";

- The federal government has a duty to take "immediate measures consistent with the goal of restoring" global atmospheric $CO_2$ levels to below 350 parts per million (ppm) "this century";

- To "draw down" $CO_2$ levels to achieve the "scientific prescription" for meeting their duty to protect the atmosphere, defendants must act "collaboratively" to: "enable" global fossil fuel $CO_2$ emissions to "peak" by 2012; reduce such emissions by at least 6% per year through at least 2050; and cease "deforestation and reforest degraded forest lands and improve soil conditions on agricultural lands that will sequester an additional 100 gigatons of carbon this century";

- To "support effective global collaboration" to protect the atmosphere and "Earth's natural systems," the federal government is obligated to act pursuant to its "common but differentiated responsibility and respective capabilities" to "reduce its own emissions" and "provide financial and technological assistance to developing

8

countries to support them in reducing their own emissions, at an aggregate rate consistent with a rate of global emissions decline of 6% per year."

The Prayer for Relief (A072-73) also requested a mandatory injunction that would order defendants to:

(1) Take action "consistent with" the federal government's "equitable share of the global effort, corresponding to its share of the responsibility for causing an increase in greenhouse gas concentrations and its financial and technological capability to reduce global emissions, and thereby enable global $CO_2$ emissions to peak by December 2012" and "decline" by "at least" 6% per year thereafter;

(2) Take "all necessary actions" to reduce $CO_2$ emissions "in the United States" by "at least" 6% per year beginning in 2013; and

(3) Prepare by December 31, 2011 and submit for court approval: (a) an annual "accounting or inventory" of all greenhouse gas emissions "originated by the United States and its citizens and corporations," (b) an annual "carbon budget" consistent with the reductions sought in injunction request nos. (1) and (2), above, and (c) a "climate recovery plan, consistent with the best available science," "calibrated" to achieve the reductions sought in injunction request nos. (1) and (2), above.

Finally, the complaint asserted that the Court should retain jurisdiction over the action "until such time as the Court is satisfied that all public trust violations have been fully and effectively remediated."  Cmplt. ¶22, A040-41.

9

Two groups were allowed to intervene on the side of defendants: the National Association of Manufacturers and a coalition of California companies and trade associations. Motions to dismiss were filed by defendants and by the two sets of intervenors. Dkt. Nos. 64, 67, 159. The federal defendants' motion to dismiss, brought under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserted several alternative grounds for dismissal, including that: (1) Youth lacked standing; (2) Youth's public trust claim did not arise under federal law; (3) Youth's claim was barred by the political question doctrine; (4) the United States had not waived its sovereign immunity to Youth's claim; and (5) even if Youth could state a federal public trust claim against the United States, that claim was foreclosed by the Clean Air Act's displacement of federal common law in this area.

After briefing and oral argument, the district court on May 31, 2012, dismissed the complaint with prejudice, concluding that Youth failed to establish a basis for federal jurisdiction because the public trust doctrine, upon which their claims hinged, is a creature of state common law and not federal law. A79-83; *Alec L. v. Jackson*, 863 F. Supp. 2d 11, 15–17 (D.D.C. 2012). The court pointed out, *inter alia,* that the Supreme Court had explained that "'the public trust doctrine *remains a matter of state law*'" and that its "'contours * * * *do not depend upon the Constitution.*'" A79-80 (*quoting PPL Montana*, 132 S. Ct. at 1235, emphasis added by district court). The court also explained that, even if the public trust doctrine had been grounded in federal common

10

law at some point in time, Congress plainly displaced any such doctrine, at least in the context of this suit, through its passage of the comprehensive Clean Air Act.  A81-82 (*citing Am. Elec. Power Co. v. Connecticut*, 131 S. Ct. 2527, 2537 (2011)).

Youth sought reconsideration of the court's decision pursuant to Federal Rule of Civil Procedure 59(e), claiming that the court had failed to provide them with sufficient opportunity to address the Supreme Court's decision in *PPL Montana,* and that the court misinterpreted that case, as well as *Am. Elec. Power Co. v. Connecticut.* Dkt. No. 175.  Youth asked in the alternative for leave to amend the complaint to set forth the alleged constitutional basis of their claim.  On May 22, 2013, the district court denied the request for reconsideration and the request to amend the complaint. A086-97.  It found that Youth had been given adequate opportunity to address the *PPL Montana* decision, and that the other matters raised in the motion for reconsideration were simply attempts to re-argue points already made, falling far short of meeting the requirements for reconsideration under Rule 59(e).

This appeal followed.

## SUMMARY OF ARGUMENT

The district court dismissed Youth's complaint for lack of federal jurisdiction. This dismissal should be affirmed because there are multiple reasons why the court lacked subject matter jurisdiction.

The complaint alleged a single claim: that defendants were failing to abide by a legal responsibility imposed by the public trust doctrine to protect the atmosphere. While recognizing that this doctrine "evolved primarily around the rights of the public with respect to tidelands and navigable waters * * *," Br. 15, n. 2, Youth here seek to extend the doctrine far beyond its historical roots and apply it generally to all natural resources and directly to the federal government. The district court correctly recognized, however, that whether or not the doctrine could be extended beyond the context of navigable waters in which it arose, it was plainly a creature of state law, and accordingly these claims did not arise under federal law. The Supreme Court has consistently treated the doctrine as a matter of state law; *PPL Montana* is only the latest Supreme Court case to make clear that the public trust doctrine does not arise under the Constitution or federal law.

The district court did not err in finding that "Plaintiffs' one-count complaint does not allege that the defendants violated any specific federal law or constitutional provision, but instead alleges violations of the federal public trust doctrine." A074. While Youth now contend that they alleged direct violations of the Constitution by the federal agencies, in fact the complaint merely alleged that the defendants were "trustees of Public Trust resources including the atmosphere pursuant to" the Due Process Clauses of the 5th and 14th Amendments, the Equal Protection principles of the 14th Amendment, and the Commerce Clause. Complaint at ¶¶139-141, A069.

12

These mere references to constitutional provisions alleged to be sources of the federal

defendants' status as trustees for the atmosphere did not establish that a right or

immunity created by the Constitution was an essential element of the plaintiffs' cause

of action.  *See Gully v. First National Bank*, 299 U.S. 109, 112 (1936).  In any event,

Youth have never cited any authority for the novel proposition that these provisions

of the Constitution impose trust duties on the federal government to protect natural

resources, and their theory that the Constitution is the source of public trust duties

applicable to federal agencies is far too insubstantial and unsupported to establish that

their complaint arose under federal law.

    If this Court finds that Youth's public trust claim arose under federal law, it

should consider whether Youth had standing to bring that claim.  The Supreme Court

addressed standing requirements in the context of greenhouse gas emissions and

global warming in *Massachusetts v. EPA,* 549 U.S. 497 (2007).  The majority's rationale

in that case for finding that the State of Massachusetts had standing to challenge the

Environmental Protection Agency's denial of a rulemaking petition on grounds of

asserted lack of authority to regulate greenhouse gas emissions shows why standing is

lacking over the much more generalized public trust claim in this case.  Unlike the

situation in *Massachusetts v. EPA,* the complaint here failed to allege any particularized

harm caused by a particular challenged agency action that could be redressed by a

court.  Instead, the complaint alleges undifferentiated impacts of global warming

13

allegedly caused by a broad and highly generalized array of federal agency actions and inactions. Under the Constitution, the province of federal courts is to decide on the rights of individuals, while the broad public interest in effective government-wide strategies for dealing with the problem of greenhouse gas emissions is a matter for Congress and the Executive Branch. The complaint here asserted a classic generalized grievance, insufficient to establish standing.

## STANDARD OF REVIEW

This Court reviews *de novo* the dismissal of a complaint for lack of subject matter jurisdiction, and must accept the factual allegations in the complaint as true. *Sturm, Ruger & Co., Inc. v. Chao*, 300 F.3d 867, 871 (D.C. Cir. 2002).

## ARGUMENT

## I.     THE DISTRICT COURT CORRECTLY RULED THAT YOUTH'S PUBLIC TRUST CLAIM DID NOT ARISE UNDER FEDERAL LAW

As the district court noted, "[w]hen determining whether a district court has federal question jurisdiction pursuant to Article III and 28 U.S.C. § 1331, the jurisdictional inquiry 'depends entirely upon the allegations in the complaint' and asks whether the claim as stated in the complaint 'arises under the Constitution or laws of the United States.'" A079, quoting *Carlson v. Principal Fin. Group*, 320 F.3d 301, 306 (2d Cir. 2003). The district court correctly found that the complaint's claim for alleged "Violations of the Public Trust Doctrine" (A069 (subtitle)) did not arise under

14

the Constitution or laws of the United States, since the public trust doctrine is a

purely state law doctrine. A079-80, *citing PPL Montana,* 132 S. Ct. at 1235.

## A. Youth's Public Trust Claim Did Not Arise Under the Constitution or Federal Law.

The public trust doctrine invoked in the complaint has its roots in English

common law. *Dist. of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1082 (D.C. Cir. 1984).

The classic statement of the public trust doctrine in this Country was articulated in

*Illinois Cent. R. Co. v. Illinois*, 146 U.S. 387 (1892). The Supreme Court there found that

the Illinois Legislature did not have authority to vest the State's title to a portion of

the navigable waters of Lake Michigan in a private party. An attempted transfer was

beyond the authority of the legislature since it amounted to abdication of its

obligation to regulate, improve, and secure submerged lands for the benefit of every

individual. *Id.* at 453-460.

In cases decided both before and after *Illinois Central,* the Supreme Court has

steadfastly and without exception treated the public trust doctrine as a matter of state,

not federal law. *PPL Montana,* 132 S. Ct. at 1235 ("the public trust doctrine remains a

matter of state law;" and its "contours * * * do not depend upon the Constitution");

*Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 285 (1997); *Phillips Petroleum Co. v. Mississippi*,

484 U.S. 469, 475 (1988); *Appleby v. City of New York*, 271 U.S. 364, 395 (1926); *Long*

15

*Sault Dev. Co. v. Call*, 242 U.S. 272, 278-79 (1916); *Shively v. Bowlby*, 152 U.S. 1, 57-58 (1894).

The most recent of those cases, *PPL Montana,* involved an effort by Montana to obtain compensation for a power company's use of a riverbed. The Montana Supreme Court upheld the State's claim that it held title to the riverbed. In the Supreme Court, the State asserted among other things that denying its title to the disputed riverbeds would undermine the public trust doctrine. In a unanimous decision, the Court responded that Montana's argument was based on a misunderstanding of the doctrine. The Court held that it was the federal equal-footing doctrine that determines who holds title to riverbeds and that the public trust doctrine had no bearing on the issue. In reaching this decision, the Court explained that the public trust doctrine is not an element of federal law and is not based on the federal Constitution, unlike the equal-footing doctrine which had "federal constitutional significance" under the Court's precedents. 132 S. Ct. at 1227. The Court observed that its ruling in *Illinois Central* was "'necessarily a statement of Illinois law;'" that "the public trust doctrine remains a matter of state law;" and that its "contours * * * do not depend upon the Constitution." *Id.* at 1235 (*citing, inter alia, Appleby v. City of New York*, 271 U.S. 364, 395 (1926); *Shively v. Bowlby*, 152 U.S. 1, 49 (1894)). This ruling, grounded on the Court's prior cases regarding the nature of the

16

public trust doctrine, is fatal to Youth's current argument that the doctrine arises

under federal law because it is allegedly based on the Constitution.[4]

Youth contend (Br. 39-42) that neither *PPL Montana* nor earlier cases declaring

that the public trust doctrine is a matter of state law expressly considered a claim like

theirs that explicitly relies on the federal Constitution as the basis for the doctrine.

While it may be that no party has attempted to advance the theory suggested by

Youth here, it is clear that any such claim is starkly inconsistent with the Supreme

Court's teachings that the public trust doctrine "remains a matter of state law;" whose

"contours * * * do not depend upon the Constitution." *PPL Montana,* 132  S. Ct. at

1235.

Youth cite no case that has found any constitutionally-based trust duty (or any

trust duty for that matter) arising from a federal agency's actions or non-actions

---

[4]  Cases from the lower federal courts, including this Court, have consistently
recognized the Supreme Court's understanding that the public trust doctrine is a
matter of state and not federal law.  *See Dist. of Columbia v. Air Fla., Inc.*, 750 F.2d 1077,
1082-83 (D.C. Cir. 1984) ("the public trust doctrine has developed almost exclusively
as a matter of state law" and functions as a "constraint on states' ability to alienate
public trust lands and as a limitation on uses that interfere with trust purposes"); *see
also United States v. 32.42 Acres of Land*, 683 F.3d 1030, 1038-39 (9th Cir. 2012)(public
trust doctrine is a matter of state law, whose contours "are determined by the states,
not by the United States Constitution"); *Sansotta v. Town of Nags Head*, 724 F.3d 533,
537 n.3 (4th Cir. 2013) ("public trust doctrine * * * is a matter of state law"); *Brigham
Oil & Gas, L.P. v. N.D. Bd. of Univ. & Sch. Lands*, 866 F. Supp. 2d 1082, 1088 (D.N.D.
2012) (same); *New York v. DeLyser*, 759 F. Supp. 982, 990 (W.D.N.Y. 1991)("claims
relating to the public trust doctrine do not 'arise under' federal law" and the state's
public trust responsibilities are "not * * * circumscribed by federal common law").

regarding a natural resource like the atmosphere.  Youth rely (Br. 45) on a handful of district court decisions, but none of them asserts the existence of a constitutionally-based federal public trust doctrine enforceable against the federal government.  Two of these cases, *City of Alameda v. Todd Shipyards*, 635 F. Supp. 1447 (N.D. Cal. 1986), and *United States v. 1.58 Acres of Land*, 523 F. Supp. 120 (D. Mass. 1981), concluded that when the United States obtains title to submerged state lands, the transfer of the land to the United States does not extinguish the public trust restrictions that had burdened the state title.  See *Todd Shipyards*, 635 F. Supp. at 1450; *1.58 Acres of Land*, 523 F. Supp. at 121, 124–25.[5]  Those narrow holdings are entirely consistent with the

---

[5]  Youth quote (Br. 16) a portion of the decision in *1.58 Acres* referring to "aspects of the public interest" being "administered by Congress in its capacity as trustee of the *jus publicum*."  523 F. Supp. at 123.  They omit a qualifying footnote, however, which defines the nature of the federal government's role as follows:

> "The United States holds [such] resources * * * in trust for its citizens in one sense, but not in the sense that a private trustee holds for a *cestui que trust*.  The responsibility of Congress is to utilize the assets that come into the hands of the sovereign in the way that it decides is best for the Nation."

*1.58 Acres of Land*, 523 F. Supp. at 123 n.3 (quoting *Alabama v. Texas*, 347 U.S. 272, 277 (1954) (Reed, J., concurring) (emphasis added)).  The most that this case suggests is that to the extent there are trust assets held by the federal government, it is entirely up to Congress to determine how to use them.

principle that the public trust doctrine is a matter of state law.[6]  And Youth's reliance

(Br. 45) on *United States v. 32.42 Acres of Land*, 683 F.3d 1030 (9th Cir. 2012), is plainly

mistaken: that case squarely holds that a public trust interest in submerged lands arises

as a matter of state law only, and as such cannot survive under the Supremacy Clause

once the United States acquires the property.  683 F.3d at 1037-1039, citing *PPL*

*Montana*, 132 S. Ct. at 1235.

     *In re Steuart Transportation Co.*, 495 F. Supp. 38 (E.D. Va. 1980), held that the

federal government was authorized to recover against Steuart for damage to migratory

waterfowl, statutory penalties and cleanup costs following an oil spill, overruling

Steuart's contention that the government lacked such authority because it did not

have an "ownership" interest in the waterfowl.  The "sole issue" in that case was

whether the United States had the right to sue the private company that had spilled

oil.  *Id.* at 39.  The district court's stray comment that the public trust doctrine

imposes upon the United States "the duty to protect and preserve the public's interest

in natural wildlife resources" (*id.* at 40), is *dicta* and rests on "virtually no analysis."

*District of Columbia v. Air Fla., Inc.*, 750 F.2d at 1083.  It is also at odds with consistent

---

[6]  In any event, these two district court holdings are questionable on their own terms.
Better reasoned subsequent cases, including *United States v. 32.42 Acres of Land*, 683
F.3d 1030, 1038-39 (9th Cir. 2012); and *United States v. 11.037 Acres of Land*, 685 F.
Supp. 214, 217 (N.D. Cal. 1988), have found that the United States does not take title
subject to any state law-created public trust interests.

Supreme Court precedent establishing that the public trust doctrine is a creature of state law.[7]

Accordingly, this Court should affirm the district court's ruling that there exists no federal law public trust doctrine that could support Youth's assertion that their claims arise under federal law.

## B.  No Constitutional Claim Appeared on the Face of the Complaint.

In an effort to identify a constitutional basis for their claims of a federal public trust doctrine, Youth here assert (Br. 13, heading II) that the "Government Violated Their Constitutional Rights."  In their brief at 26-27, they further assert that their "constitutional liberty interests are being violated by government inaction in protecting and restoring the balance of the atmosphere."  They also assert (Br. 49) that "there is a sovereign constitutional duty to protect the atmosphere as an essential natural resource," and that "Government, as trustee, is violating that fiduciary duty."

Youth's present claim that the government "violated their constitutional rights" was not made in the district court prior to final judgment.  As the district court pointed out in denying the motion for reconsideration, Youth's counsel during the

---

[7]  Nor do Youth cite any authority suggesting that the federal government would be subject to the public trust doctrine. *See Sierra Club v. Andrus,* 487 F. Supp. 443, 449 (D.D.C. 1980) ("To the extent that plaintiff's argument advances the proposition that defendants are charged with 'trust' duties distinguishable from their statutory duties, the Court disagrees. Rather, the Court views the statutory duties previously discussed as comprising all the responsibilities which defendants must faithfully discharge.")

hearing on the motions to dismiss denied that Youth were alleging any specific

constitutional violations, explaining that their claim instead was that the defendants

were violating duties as trustees under the public trust doctrine. A094, quoting

5/11/12/ Transcript at 65-66. Accordingly, Youth have waived any argument that

their complaint alleged violations of the Constitution. *See United States v. Badru,* 97

F.3d 1471, 1476 (D.C. Cir. 1996) (constitutional challenge to statute raised for the first

time on appeal is barred); *United States v. David,* 96 F.3d 1477, 1482 (D.C. Cir. 1996)

("We do not reach David's Commerce Clause challenge to his 18 U.S.C. § 922(g)(1)

conviction because he failed to raise the claim in the lower court.").

In any event, Youth's new tack in this Court cannot avoid the failure of the

complaint to adequately invoke federal question jurisdiction. To begin with, the

Supreme Court has made clear that "[t]he presence or absence of federal-question

jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that

federal jurisdiction exists only when a federal question is presented on the face of the

plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392

(1987), *quoting from Gully v. First National Bank*, 299 U.S. 109, 112-113 (1936). "The

well-pleaded complaint rule stands for the proposition that the court, in determining

whether the case arises under federal law, will look only to the claim itself and ignore

any extraneous material." Wright & Miller, 13D *Fed. Prac. & Proc. Juris.* § 3566 (3d ed.,

2013).  "Jurisdiction may not be sustained on a theory that the plaintiff has not

advanced."  *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 810 n.6 (1986).

Here, as the district court noted, "Plaintiffs' one-count complaint does not

allege that the defendants violated any specific federal law or constitutional provision,

but instead alleges violations of the federal public trust doctrine."  A074.  The district

court was correct.  The complaint stated a single claim for alleged "Violations of the

Public Trust Doctrine."  A069 (subtitle).  The complaint explained that "Plaintiffs

bring this action to enforce the mandatory duty of Defendants, and each of them,

under the Public Trust Doctrine."  A050, ¶66.  It alleged that "[t]he atmosphere,

including the air, is one of the crucial assets protected by the Public Trust Doctrine"

(*id.* ¶67), and that "[a]ll the Defendants have an affirmative duty under the Public

Trust Doctrine to restore Earth's climate equilibrium in the time frame scientific

analysis deems necessary to avoid catastrophic climate change" (A051, ¶68).

When defendants moved to dismiss on grounds that Youth's claim under the

Public Trust Doctrine did not arise under federal law, Youth responded by pointing

to the Supreme Court's decisions in *Ill. Cent. R.R. v. Illinois*, 146 U.S. 387, 453 (1892),

and *Geer v. Connecticut*, 161 U.S. 519, 534 (1896), *overruled by Hughes v. Oklahoma*, 441

U.S. 322 (1979), claiming that these decisions "recognized the Public Trust Doctrine

was needed as a bulwark to protect resources too valuable to be disposed of at the

whim of the legislature."  Plaintiffs' Opposition to Defendants' Motion to Dismiss,

22

Dkt. 106, at 3-4. Youth contended that "[t]hese seminal public trust cases are not limited in application to the 50 sovereign states, but apply equally to the federal government." *Id.* at 4.

The mere fact that the complaint also *mentioned* provisions of the Constitution does not indicate that it asserted claims under the Constitution. The complaint simply alleged that the defendant agency heads were trustees of the atmosphere "pursuant to" the Commerce Clause, the Due Process and Equal Protection provisions of the 5th and 14th Amendments, as well as pursuant to unspecified "statutory provisions." A069 ¶¶139-142. Saying that defendants' alleged status as trustees of the atmosphere arose pursuant to certain constitutional provisions and unnamed statutes is not the same as alleging a violation of the Constitution or those statutes.[8]

"The federal nature of the right to be established is decisive - not the source of the authority to establish it." *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 483 (1933). As the Supreme Court has observed, were it otherwise, anyone claiming title to real estate in the western United States could bring suit in federal court since title to all lands in those parts of the nation is traceable to a federal grant or law. *Shoshone Mining Co. v. Rutter*, 177 U.S. 505 (1900). The nature of the right sought to be established in this

---

[8] Moreover, as explained *infra* at 24-27 & n.9, these statements that the 5th and 14th Amendments and the Commerce Clause somehow impose trust duties on federal agencies regarding the atmosphere are utterly without legal support, and thus may be disregarded as insubstantial bases for federal jurisdiction.

case is to have the public trust doctrine enforced with regard to an alleged trust asset (the atmosphere). But the only public trust right that the courts have recognized arises under state law and names state governments as public trustees. The mere references to constitutional provisions alleged to be sources of the federal defendants' status as trustees for the atmosphere did not establish that a right or immunity created by the Constitution was an essential element of the plaintiffs' cause of action. *See Gully v. First National Bank*, 299 U.S. at 112 ("[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action").

In sum, the district court was clearly correct in finding that the complaint did not allege that the defendants violated any specific federal law or constitutional provision, but instead alleged only violations of the public trust doctrine, and as such did not establish a basis for federal jurisdiction. A074.

### C. Youth's Claim Of a Constitutional Basis For Alleged Public Trust Duties Is Too Insubstantial To Provide a Basis For Jurisdiction.

Even if, contrary to the foregoing, Youth had adequately pled a constitutional basis for their claims in the complaint, that would not have overcome the jurisdictional deficiency. To establish federal question jurisdiction, "[i]t is not enough to utter the word 'Constitution' and then present a claim that rests on state law. * * *

24

It is therefore essential that the federal claim have some substance - that it be more than a pretext * * *." *Avila v. Pappas*, 591 F.3d 552, 553 (7th Cir. 2010).

In *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974), the Supreme Court explained that, "[o]ver the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'" 415 U.S. at 536-37, *quoting Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904). In *Hagans,* the complaint alleged that a state regulation permitting the recoupment of rent payments from future welfare disbursements violated equal protection of the laws because it lacked any rational basis. *See Hagans,* 415 U.S. at 540-41 (applying "face of the complaint" rule). The Court found the claim to be sufficiently substantial to create federal jurisdiction, because previous Supreme Court decisions had established that classifications in welfare statutes like the one challenged in the complaint could be invalidated on Equal Protection grounds if they lacked a rational basis. *Id.* at 539. Similarly in *Best v. Kelly*, 39 F.3d 328 (D.C. Cir. 1994), this Court found that an action by prisoners under 42 U.S.C. § 1983 alleging that the termination of a drug treatment program by the District of Columbia government without due process deprived them of constitutionally protected liberty interests in the benefits of the program "raised federal constitutional questions" that were not so "patently insubstantial" as to warrant dismissal for lack of jurisdiction. *Id.* at 330-331.

25

Unlike *Hagans* and *Best v. Kelly,* which involved clearly-stated constitutional claims that at least fit the pattern of previously successful claims, Youth's public trust claim, to the extent it can be viewed as a constitutional claim at all, is entirely unprecedented.  There are no cases from any court holding or even suggesting that an alleged federal agency failure to prevent "waste" of an alleged "public trust asset" can be redressed in federal court in the absence of any identified duty imposed by Congress, simply because a plaintiff has alleged violations of the Constitution.  The Supreme Court made clear in *PPL Montana* that the public trust doctrine has no basis in the federal Constitution, 132 S. Ct. at 1235.  And even if one disregards that holding, it is inconceivable that the framers would have recognized trust duties beyond the traditional duties contained in English common law, such as protection of the public's navigation interests and the governmental duty to refrain from alienating submerged lands, as described by the Supreme Court in *Illinois Central.*[9]

---

[9]  Nor is there any plausible claim that defendants have violated the particular constitutional provisions cited in the complaint other than through the asserted violations of the public trust doctrine. The Commerce Clause is a grant of power authorizing Congress to regulate, not a requirement that agencies undertake actions to deal with a particular problems such as those alleged in the complaint.  *See, e.g., Gonzales v. Raich*, 545 U.S. 1, 17 (2005).  The Fourteenth Amendment "applies only to the states," not to the federal government.  *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 213 (1995).  The Due Process Clause is a limitation on the government's power to act; it does not impose affirmative obligations like those Youth seek to impose on defendants. *See, e.g., Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992).  The "reserved powers" doctrine discussed at Br. 19-21 serves only to prohibit one legislature from adopting legislation that would

26

The complete absence of any authority recognizing a purported "sovereign constitutional duty to protect the atmosphere" (Br. 49) establishes that the assertion of such a right is wholly insubstantial and cannot serve to establish that this case arises under federal law. *See Avila v. Pappas,* 591 F.3d at 554 (allegation of violation of substantive due process did not establish federal jurisdiction, since "substantive due process deals with violations of fundamental rights only" and "[n]o court has held that the expense of retaining a criminal-defense lawyer infringes a 'fundamental' right to put the money to other ends").

### D.  Any Claim of a Right to Relief Under Federal Common Law is Inconsistent With The Supreme Court's Decision in *AEP v. Connecticut.*

As an alternative basis for its dismissal, the district court found that "even if the public trust doctrine had been a federal common law claim at one time, it has subsequently been displaced by federal regulation, specifically the Clean Air Act," relying on the ruling in *American Electric Power Co. v. Connecticut*, 131 S. Ct. 2527, 2537-38 (2011) (*AEP v. Connecticut*).  A081.  In *AEP v. Connecticut*, several states sued private utility companies and the Tennessee Valley Authority, asserting that by contributing to global warming, the defendants' carbon-dioxide emissions created a substantial and unreasonable interference with public rights in violation of the federal common law of

---

bind a future one; it imposes no obligations on federal agencies.  *Fletcher v. Peck*, 10 U.S. 87, 135 (1810).

interstate nuisance.  131 S. Ct. at 2534.  Addressing this federal common law claim for

curtailment of greenhouse gas emissions, the Court held that "[a]ny such claim would

be displaced by the federal legislation authorizing EPA to regulate carbon-dioxide

emissions."  *Id.* at 2537.

The district court correctly determined that Youth's attempt to assert a federal

common law public trust claim was fundamentally inconsistent with the ruling in

*AEP v. Connecticut*.  A081-82.  Youth now expressly disclaim reliance on federal

common law, choosing to rely solely on purported constitutional claims.  *See* Br. 48

("[t]he doctrine of common law displacement by legislation does not apply to the

instant case because, as discussed above, Youth's claim is constitutional and based on

a fundamental obligation of the sovereign. * * * Legislative displacement has never

been applied to constitutional claims").  However, as shown *supra* at 20-21, Youth

presented their claim in the district court as based on an alleged federal public trust

doctrine, not as a constitutional claim, and they should be barred from changing

theories on appeal.

In any event, Youth's attempt (Br. 50) to distinguish *AEP v. Connecticut* on

grounds that the holding there was limited to fossil fuel fired power plants is

misguided.  The ruling in *AEP v. Connecticut* was based on the fact that Congress in the

Clean Air Act had provided a means to seek limits on emissions of carbon dioxide,

the relief sought by the plaintiffs in that case.  That being so, the Supreme Court

28

found "no room for a parallel track" for addressing carbon dioxide emissions "by judicial decree" under federal common law. *Id.* at 2538, 2539. *AEP v. Connecticut* did not turn on the identity of the defendants, as Youth contend, but on the fact that Congress had exercised its "'considered judgment'" on the problem of carbon dioxide emissions. As the district court here found, that same exercise of congressional judgment would displace the application of any purported "public trust" federal common law dealing with carbon dioxide emissions leading to global warming.

### E.  The District Court Did Not Abuse Its Discretion By Denying Leave To Amend The Complaint.

In their motion for reconsideration under Fed. R. Civ. P. 59(e) (Dkt. 175), Youth requested that the district court grant leave to amend the complaint. A383. The district court denied that request in its Memorandum Opinion denying the motion for reconsideration. The court pointed out that "'once a final judgment has been entered, a court cannot permit an amendment unless the plaintiff first satisfies Rule 59(e)'s more stringent standard for setting aside that judgment.'" A095, quoting *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004). Since Youth had "fail[ed] to establish any entitlement to relief under Rule 59(e)," the request for leave to amend could not be granted. A095.

In their opening brief, Youth do not challenge the district court's ruling that they failed to establish any entitlement to relief under Rule 59(e); they have

accordingly waived any argument that the denial of that motion was an abuse of discretion. *United States v. Van Smith*, 530 F.3d 967, 973 (D.C. Cir. 2008) ("'We require petitioners and appellants to raise all of their arguments in the opening brief'"), *quoting Corson & Gruman Co. v. NLRB*, 899 F.2d 47, 50 n. 4 (D.C. Cir. 1990)).  Youth therefore lack an essential prerequisite for challenging the denial of their post-judgment request to amend the complaint. *See Ciralsky,* 355 F.3d at 673 ("[b]ecause we conclude that the district court did not abuse its discretion in denying Ciralsky's Rule 59(e) motion, we likewise conclude that it did not err thereafter in denying Ciralsky's motion for leave to file an amended complaint under Rule 15(a)"); *see also Firestone v. Firestone*, 76 F.3d 1205, 1208-1209 (D.C. Cir. 1996).

Youth attempt to circumvent this problem by suggesting that they did seek leave to amend before final judgment was entered.  They state (Br. 36) that they requested leave to amend at the May 11, 2012, oral argument on the motions to dismiss.  As the cited transcript page in the Appendix makes clear, however, the district court simply asked Youth's counsel why the court should not dismiss the case with leave to amend to bring specific claims against the agencies "identify[ing] whatever rule-making or enforcement actions that they have not done, and we'll adjudicate all of those under the standards set forth in the APA?"  A382.  Youth's counsel replied that "if this court believes it's appropriate, we would like leave to amend." *Id.*  But Youth never did seek leave to amend to bring claims under the

Administrative Procedure Act.  Their only request to amend was in their motion for reconsideration under Rule 59(e), a request that made no mention of APA claims but simply asserted a desire to more clearly plead the constitutional ground of their public trust claim.  A383.[10]

The district court properly denied Youth's only request to amend, which came after final judgment, on the ground that Youth had not made a sufficient showing to obtain reconsideration under Rule 59(e).  It would also have been proper for the court to have denied leave to amend on grounds that amending would have been futile.  *See, e.g.*, *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (leave to amend should be denied when the proposed amended complaint would not survive a motion to dismiss).  Since the Supreme Court has made clear that public trust claims do not arise under the Constitution (s*ee supra* at 15-27) it would have been futile to amend the complaint here.

---

[10] Even now, Youth's request is that "if this Court finds Youth improperly pled their Public Trust Doctrine claims under the Constitution, Youth should be afforded leave to amend their Amended Complaint" (Br. 38), not that they wish to assert claims under the APA.

## II.    YOUTH LACK STANDING BECAUSE THE COMPLAINT ALLEGED GENERALIZED GRIEVANCES RATHER THAN INDIVIDUALIZED INJURY CAUSED BY PARTICULAR GOVERNMENTAL ACTION AND REDRESSABLE BY A COURT

The motions to dismiss of defendants and intervenors contended that Youth had failed to establish their standing to bring this action.  The district court did not address the question of standing, having found a different barrier to subject matter jurisdiction in Youth's failure to establish jurisdiction under 28 U.S.C. § 1331.  It was proper for the district court to dismiss on that ground without first addressing standing.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ("there is no unyielding jurisdictional hierarchy" that requires court to address one jurisdictional defect before another).  This Court may find that subject matter jurisdiction was lacking in this case under either the federal question doctrine or the standing doctrine.

Since this case was resolved on motions to dismiss, standing is determined based on the allegations of the complaint.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (*Lujan*).  Even taking the complaint's allegations as true, it failed to adequately allege that the plaintiffs have suffered or are threatened with particularized injury as a result of the challenged actions of the defendants, or that their injuries are redressable by a decree of the court.  Rather, the allegations made clear that Youth assert generalized grievances, better resolved by the Executive and Legislative Branches of government rather than the Judiciary.

32

A.    The Complaint Fails To Allege Particularized Harm Traceable To The Challenged Actions and Redessable By Courts.

In *Massachusetts v. EPA,* 549 U.S. 497 (2007), the Supreme Court considered a challenge by states, local governments and environmental organizations to EPA's denial of a rulemaking petition asking EPA to regulate greenhouse gas emissions from new motor vehicles under § 202(a)(1) of the Clean Air Act, 42 U.S.C. § 7521(a)(1). EPA had denied the petition primarily because it then believed that as a legal matter greenhouse gases were not "air pollutants" within the meaning of the Clean Air Act. *Id.* at 513.

In a 5-4 decision, the Court found that the State of Massachusetts had standing to bring the challenge, relieving the Court of the need to evaluate the standing of the other parties.  *Id. at* 518.  The majority rejected the notion that "because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle."  *Id.* at 517.  It pointed to the following language from Justice Kennedy's concurrence in *Lujan*:

> "While it does not matter how many persons have been injured by the challenged action, the party bringing suit must show that the action injures him in a concrete and personal way.  This requirement is not just an empty formality.  It preserves the vitality of the adversarial process by assuring both that the parties before the court have an actual, as opposed to professed, stake in the outcome, and that the legal questions presented * * * will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."

33

*Massachusetts v. EPA,* 549 U.S. at 517, quoting *Lujan,* 504 U.S. at 581.  The majority then applied the three-part test for Article III standing from the majority opinion in *Lujan,* 504 U.S. at 560-61.  "*Lujan* holds that a litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury."

Based in particular on the loss of state-owned lands to rising sea levels caused by global warming, *id.* at 522-23, the majority ultimately found that Massachusetts had established sufficiently particularized injury.  Since EPA's legal position on the scope of the Clean Air Act had led it to refuse to regulate a major source of greenhouse gas emissions, Massachusetts was able to show that its injury was traceable to the challenged agency action, *id.* at 524-25, and that the Court could redress the injury by correcting EPA's erroneous view of the statute.  The majority found that, "EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent,'" and that "[t]here is, moreover, a 'substantial likelihood that the judicial relief requested' will prompt EPA to take steps to reduce that risk."  *Id.* at 518 (*quoting Lujan*, 504 U.S. at 560).

The differences between this case and *Massachusetts v. EPA* are stark, and show why Youth lack standing.  The allegations of Youth's complaint regarding asserted injuries and their alleged relation to actions of the defendants are simply too

34

generalized and abstract to demonstrate particularized injury. *See Lujan,* 504 U.S. at 561 n.1 ("[b]y particularized, we mean that the injury must affect the plaintiff in a personal and individual way"); *see also Summers v. Earth Island Institute,* 555 U.S. 488, 495-97 (2009)(plaintiff may not rely on speculation to show particularized injury at hands of challenged government action). The complaint broadly alleges injury to forests (Compl. ¶¶ 29, 39), glaciers (¶30), waterways (¶40, 46), infrastructure (¶44), ecosystems (¶44), and "human civilization" itself (¶81), both in the United States (¶29 (Colorado); ¶44 (California); ¶46 (Florida)), and abroad (¶30 (Iceland); ¶ 35 (Africa)), from factors linked to rising global temperatures, such rising sea levels and extreme weather. While, as *Massachusetts v. EPA* shows, it is possible for a plaintiff to be injured in a particularized way by a widespread environmental problem such as sea level rise, none of the plaintiffs here makes any allegation of such particularized injury. *See Center for Biological Diversity v. U.S. Dept. of the Interior,* 563 F.3d 466, 475-79 (D.C. Cir. 2009) (harm from climate change allegedly resulting from additional offshore oil and gas leasing "is not focused any more on these petitioners than it is on the remainder of the world's population," and hence cannot establish particularized injury for standing).

Even more deficient are the complaint's allegations tracing injury to the challenged actions of the defendants. In *Massachusetts v. EPA*, the State could show that the particular EPA determination under challenge – that EPA lacked authority to

35

regulate greenhouse gas emissions from motor vehicles under the Clean Air Act – led to a substantial amount of additional carbon dioxide emissions threatening the State's interest in preserving its shoreline areas from rising sea levels.  *See* 549 U.S. at 524 (noting that "reducing domestic automobile emissions is hardly a tentative step" toward reducing emissions of greenhouse gasses).  The complaint here, in contrast, is far too generalized to establish any such linkage.  The complaint asserts that "[d]efendants, and each of them, by their actions of causing, approving and allowing too many carbon emissions into Earth's atmosphere, cumulatively resulting in global heating, ocean acidification, melting icecaps and ice sheets, biodiversity loss, and extreme weather events have breached and are continuing to breach their duty as trustees."  A036 ¶10.  The complaint's charge against EPA, for instance, is simply that EPA has "failed to effectively implement and enforce the laws under its jurisdiction."  Complaint ¶53 (A047).

This is a far cry from the focused challenge in *Massachusetts v. EPA* to EPA's denial of a rulemaking petition on the ground that it lacked authority to regulate greenhouse gases under the Clean Air Act.  A generalized and unfocussed allegation that EPA's failure to "effectively" regulate violated the public trust doctrine does nothing to show that the action or inaction being challenged is the cause of plaintiffs' asserted particularized injuries.  Allowing such allegations to establish causation would permit plaintiffs to point generally to alleged "ineffective" government regulation

36

rather than particular government determinations as the source of their injuries. This would hardly "'preserve[] the vitality of the adversarial process by assuring both that the parties before the court have an actual, as opposed to professed, stake in the outcome, and that the legal questions presented * * * will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Massachusetts v. EPA,* 549 U.S. at 517 (*quoting Lujan,* 504 U.S. at 581, Kennedy, J., concurring,).[11]

That plaintiffs must trace their injury to a particular government action or inaction to establish standing was made clear in *Allen v. Wright*, 468 U.S. 737 (1984). The Supreme Court there rejected standing by parents of schoolchildren who alleged that the Internal Revenue Service had not adopted sufficient standards and procedures to fulfill its obligation to deny tax-exempt status to racially discriminatory private schools. Justice O'Connor, writing for the majority, noted that "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen,* 468 U.S. at 752. A court must ask whether "the injury [is] too abstract, or otherwise not appropriate, to be considered judicially cognizable" as well as whether "the line of causation between the illegal conduct and injury [is] too

---

[11]  Youth's allegations against the other defendant agency heads were equally generalized and unspecific. *See supra* at 5-6.

attenuated" or "the prospect of obtaining relief from the injury as a result of a favorable ruling [is] too speculative." *Ibid*. Broad programmatic claims against a course of agency action or inaction will not suffice. As Justice O'Connor explained, "[t]he idea of separation of powers that underlies standing doctrine explains why our cases preclude the conclusion that respondents alleged injury 'fairly can be traced to the challenged action' of the IRS." 468 U.S. at 759 (*quoting Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 41 (1976)).

> That conclusion would pave the way generally for suits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations. Such suits, even when premised on allegations of several instances of violations of law, are rarely if ever appropriate for federal-court adjudication.

468 U.S. at 759-60.

The complaint here was a generalized programmatic attack on government action and inaction, rather than a challenge to specifically identifiable violations of law. As *Allen v. Wright* makes clear, Youth here accordingly cannot meet the causation requirement of Article III standing.

Regarding the redressability prong of standing, the majority in *Massachusetts v. EPA* noted that *Lujan* established that "a litigant to whom Congress has accorded a procedural right to protect his concrete interests * * * can assert that right without meeting all the normal standards for redressability and immediacy." 549 U.S. at 517 (quote marks and citations to *Lujan* omitted). The majority found that Congress had

accorded such a procedural right to the State under the Clean Air Act, 42 U.S.C. § 7607(b)(1), and explained that "[w]hen a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.* at 518. The majority ultimately found that the State had shown that "the rise in sea levels associated with global warming has already harmed and will continue to harm Massachusetts," and that the risk of catastrophic harm "would be reduced to some extent if petitioners received the relief they seek," that is, a declaration reversing EPA's conclusion regarding lack of authority to regulate greenhouse gases. *Id.* at 526.

In this case, Congress has not accorded Youth any procedural right regarding the alleged public trust obligations of government. Youth must shoulder the full burden of showing that their asserted injuries are redressable. However, many of the types of redress that Youth seek – restoration of global atmospheric $CO_2$ levels to less than 350 ppm this century, cessation of deforestation, etc. – lie outside the courts' competence and jurisdiction. Youth do not cite any statute that authorizes federal courts at the behest of allegedly injured parties to issue, for instance, an injunction "[r]equiring that Defendants, and each of them, take all necessary actions to reduce $CO_2$ emissions in the United States by at least six percent per year beginning in 2013." A072, cmplnt. ¶2b. Nor do they rely on a statutory framework specifying who may bring suit or the agency duties that are supposedly being violated, such that a court

39

could provide redress by requiring compliance with those specific duties. Agencies are "creatures of statute" whose powers and obligations are dependent upon congressional authorization. *American Bus Ass'n v. Slater*, 231 F.3d 1, 9 (D.C. Cir. 2000). Courts are not at liberty to encumber agencies with duties not contemplated by Congress. *Id.* at 9-10 ("Unless Congress delegates authority to an agency, the agency is without power to act"). Youth accordingly cannot show that their alleged injuries resulting from the alleged "waste" of trust assets by government agencies are redressable.

### B.     The Complaint Alleges Only Generalized Grievances.

More generally, Youth's claim that the Judicial Branch should compel the Executive Branch to act in a way that protects the global atmosphere for themselves and for future generations states only a generalized grievance of the sort that cannot provide a basis for standing. *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 217 (1974) (finding a "generalized grievance" insufficient for standing where "[r]espondents seek to have the Judicial Branch compel the Executive Branch to act in conformity with the Incompatibility Clause, an interest shared by all citizens"). "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citing *Barrows v.*

*Jackson*, 346 U.S. 249 (1953)). Explaining its generalized grievance cases, the Court in

*Lujan* observed that:

> 'The province of the court,' as Chief Justice Marshall said in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170, 2 L.Ed. 60 (1803), 'is, solely, to decide on the rights of individuals.' Vindicating the public interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive.

*Lujan*, 504 U.S. at 576.

Youth's claim in this case amounts to a generalized grievance because they seek

to convert the undifferentiated public interest in having executive officers undertake

appropriate measures within their authority to address the threat of global warming

into an individual right, vindicable in the courts. Allowing proceedings under a public

trust theory, divorced from statutes, would require courts to make determinations

about strategies to protect the alleged trust resource (here the atmosphere) that are

essentially legislative in character, as well as determine how Executive Branch agencies

should carry out those strategies. In the climate change context, legislative and

regulatory actions are far better suited to address the scope of the problem and to

fashion an appropriately tailored set of remedies than a potentially open-ended series

of public trust actions. Even a single public trust proceeding would be a less efficient,

manageable, and accountable mechanism to consider questions such as how much the

Nation's greenhouse gas emissions should be reduced to address global climate

change; how much of the burden of reducing worldwide greenhouse gas emissions

41

should be borne by the United States; which federal agencies should promulgate regulations or alter their modes of operation; and what is the appropriate level of funding for such efforts.  As the Supreme Court made clear in *AEP v. Connecticut*, 131 S. Ct. at 2539-40, courts are ill-suited to balance the various interests of, and the burdens to be borne by, the many entities, groups, and sectors of the economy that, although not parties to this litigation, are affected by a phenomenon that spans the globe.

The establishment of appropriate levels for the reduction of $CO_2$ emissions in the United States would entail a host of policy judgments which should be made by decisionmakers who are politically accountable, have expertise, and are able to pursue a coherent national or international strategy.  *Cf. Massachusetts v. EPA*, 549 U.S. at 524 ("[agencies] whittle away at [massive problems] over time, refining their preferred approach as circumstances change and as they develop a more nuanced understanding of how best to proceed.").  Since the Supreme Court held in *Massachusetts v. EPA* in 2007 that $CO_2$ falls within delegated regulatory authority, EPA has taken significant steps toward reducing $CO_2$ and other greenhouse gas emissions, and the other defendant agencies are also undertaking substantial efforts to address climate change. *See AEP v. Connecticut,* 131 S. Ct. at 2533 (acknowledging EPA's post-*Massachusetts*

regulatory initiatives limiting greenhouse gas emissions).[12]  The publicly accountable

regulatory process is far preferable to what would result if district courts – acting

separately and without the benefit of statutory or regulatory guidance – were to use

common law public trust doctrine cases as opportunities to sit as arbiters of scientific

and technology-related disputes and as *de facto* super-regulators.

---

[12]  On December 15, 2009, EPA issued a finding concluding that greenhouse gas
(GHG) emissions from motor vehicles may reasonably be anticipated to endanger
public health and welfare.  74 Fed. Reg. 66,496 (2009).  As a result, EPA issued motor
vehicle emissions standards for certain GHGs.  75 Fed. Reg. 25324 (May 7, 2010); 76
Fed. Reg. 57106 (Sept. 15, 2011); and 77 Fed. Reg. 62624 (Oct. 15, 2012).  When the
first set of motor vehicle emissions standards were issued, EPA also concluded that
that action made GHGs subject to regulation under the Clean Air Act and therefore
triggered permitting requirements for stationary sources.  75 Fed. Reg. 17004 (Apr. 2,
2010).  EPA has also issued a regulation to phase-in federal prevention of significant
deterioration and Clean Air Act Title V permitting requirements for large stationary
sources of GHGs, beginning with the largest sources.  75 Fed. Reg. 31514 (June 3,
2010).  A non-exclusive list of efforts to address GHG emissions and global warming
by other agency defendants would include the Department of Energy's promulgation
of energy efficiency standards for buildings and for various consumer products
pursuant to the Energy Policy and Conservation Act of 1975, Public Law 94-163, 42
U.S.C. §§ 6291-6309, 6831-6836 (s*ee, e.g.,* 78 Fed. Reg. 40,945 (July 9, 2013) and 78
Fed. Reg. 36,316 (July 17, 2013); and USDA's promulgation, pursuant to Section 2709
of the Food, Conservation, and Energy Act of 2008, P.L. 110-246 (2008), 16 U.S.C. §
3844, of technical guidelines and scientific methods to assist farmers, ranchers and
forest landowners in assessing the benefits from actions to reduce greenhouse gas
emissions and increase carbon sequestration (76 Fed. Reg. 9,534 (2011).  In its efforts
to promote renewable energy sources that do not contribute to global warming, the
Department of the Interior since 2009 has approved 25 utility-scale solar facilities,
nine wind farms, and 11 geothermal plants.
http://www.blm.gov/wo/st/en/prog/energy/renewable_energy/Renewable_Energy
_Projects_Approved_to_Date.html (last checked 12/19/2013).

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

ROBERT G. DREHER
Acting Assistant Attorney General

*/s/ David C. Shilton*
DAVID GUNTER
MARTIN F. McDERMOTT
DAVID C. SHILTON
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. Box 7415
Washington, DC 20044
(202) 514-5580
david.shilton@usdoj.gov

December 23, 2013
90-7-3-19130

44

## CERTIFICATES

Pursuant to Federal Rule of Appellate Procedure 37(a)(7)(C), I certify that the foregoing Brief of Appellees contains 10,932 words, exclusive of front matter and certificates, as counted by the "word count" feature of Microsoft Word. This brief is printed in a proportionally-spaced, 14-point Garamond font.

All counsel in this case are registered to receive electronic service. Copies of the foregoing brief were served upon all counsel by operation of the Court's electronic filing system on December 23, 2013.

*/s/ David C. Shilton*
DAVID C. SHILTON
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. Box 7415
Washington, DC 20044
(202) 514-5580